[No. S059302. July 29, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
EDWIN GILMORE GARCIA, Defendant and Appellant.

## COUNSEL

Steven J. Carroll, Public Defender, Karsten Boone, Beth Shoesmith, Laura Copsey and Gary R. Nichols, Deputy Public Defenders, for Defendant and Appellant.

Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Robert M. Foster, Megan J. Beale and David Delgado-Rucci, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WERDEGAR, J.**—This case presents the question of statutory interpretation we left "for another day" in *People* v. *Davis* (1997) 15 Cal.4th 1096, 1103 [64 Cal.Rptr.2d 879, 938 P.2d 938]: Under the provisions of the "Three Strikes" law allowing certain prior juvenile adjudications to be counted for sentencing purposes as prior felony convictions (Pen. Code, §§ 667, subd. (d)(3), 1170.12, subd. (b)(3)),[1] does a prior juvenile adjudication for an offense that would qualify as a prior felony conviction (a strike) if it were the subject of an adult conviction (§§ 667, subd. (d)(1), (2), 1170.12, subd. (b)(1), (2)) qualify as a strike if the offense is not also listed in Welfare and Institutions Code section 707, subdivision (b)? We conclude such a prior adjudication does qualify as a strike if, in the prior juvenile proceeding, "[t]he juvenile was adjudged a ward of the juvenile court . . . because the person committed an offense listed in subdivision (b) of Section 707 of the Welfare and Institutions Code." (§§ 667, subd. (d)(3)(D), 1170.12, subd. (b)(3)(D).)

### FACTUAL AND PROCEDURAL BACKGROUND

Defendant was charged with and convicted in a jury trial of one count each of residential burglary (§§ 459, 460) and possession of burglar's tools

---

[1]All further statutory references are to the Penal Code unless otherwise specified.

(§ 466).[2] Four prior juvenile adjudications for residential burglary, alleged pursuant to section 667, subdivisions (b) through (i), were tried to the court in a bifurcated proceeding. The trial court found all four allegations true. In addition, the court, rejecting defendant's argument that juvenile adjudications could not be used for Three Strikes purposes because residential burglary is not an offense listed in Welfare and Institutions Code section 707, subdivision (b) (hereafter Welfare and Institutions Code section 707(b)), found the priors valid as strikes. On the prosecutor's motion, the court dismissed three of the four prior adjudication allegations. The court then sentenced defendant to the middle term of four years for the current burglary, doubled to eight years under the Three Strikes law's second strike provision (§ 667, subd. (e)(1)).

The Court of Appeal affirmed, rejecting, as had the trial court, defendant's contention his prior juvenile adjudication did not qualify as a strike under section 667, subdivision (d)(3)(D), because residential burglary is not an offense listed in Welfare and Institutions Code section 707(b). The Court of Appeal, following *People* v. *Griggs* (1997) 59 Cal.App.4th 557 [69 Cal.Rptr.2d 174], held that the Legislature's failure to include a reference to "serious and violent" offenses in section 667, subdivision (d)(3)(D) was a "drafting oversight" that should be judicially corrected. We granted review on defendant's petition.

DISCUSSION

Section 667, subdivision (d)(3) provides as follows:[3]

"A prior juvenile adjudication shall constitute a prior felony conviction for purposes of sentence enhancement if:

"(A) The juvenile was 16 years of age or older at the time he or she committed the prior offense.

"(B) The prior offense is listed in subdivision (b) of Section 707 of the Welfare and Institutions Code or described in paragraph (1) [subdivision (d)(1) of section 667] or (2) [subdivision (d)(2) of section 667] as a felony.

"(C) The juvenile was found to be a fit and proper subject to be dealt with under the juvenile court law.

---

[2] The facts of the offenses are not material to the issue on review.

[3] Subdivision (b)(3) of section 1170.12 is virtually identical. Our discussion applies to it as well.

"(D) The juvenile was adjudged a ward of the juvenile court within the meaning of Section 602 of the Welfare and Institutions Code because the person committed an offense listed in subdivision (b) of Section 707 of the Welfare and Institutions Code."

For convenience, we will refer below to the four paragraphs of section 667, subdivision (d)(3) simply as paragraphs (A), (B), (C), and (D).

Paragraph (B) disjunctively cross-references three statutory lists of offenses: the list in Welfare and Institutions Code section 707(b), which establishes a rebuttable presumption of unfitness for treatment under the juvenile court law for juveniles charged with such offenses (see Welf. & Inst. Code, § 707, subd. (c)); the list of "serious" offenses in section 1192.7, subdivision (c); and the list of "violent" offenses in section 667.5, subdivision (c). The latter two lists delineate, through cross-referencing in subdivision (d)(1) and (2) of section 667, the set of offenses that qualify as strikes when they are the subject of a prior adult conviction.

Paragraph (D), by contrast, refers only to a single statutory list: that contained in Welfare and Institutions Code section 707(b).

Because the two sets of offenses referenced in paragraph (B) (Welfare and Institutions Code section 707(b) offenses, and "serious" or "violent" offenses) are not identical, section 667, subdivision (d)(3) would contain an internal conflict if the lists in paragraphs (B) and (D) were both understood as defining the set of juvenile offenses qualifying as strikes. Under paragraph (B) a given juvenile offense would qualify if it were listed in section 707(b) *or* if it were serious or violent; under paragraph (D), however, an offense would qualify *only* if it were listed in section 707(b). Because burglary of an inhabited dwelling is listed as "serious" (§ 1192.7, subd. (c)(18)), but is not listed in section 707(b), defendant's prior juvenile adjudication for residential burglary would qualify under paragraph (B), but not under paragraph (D).[5]

The parties' briefs, lower court opinions and our own research have disclosed a number of possible resolutions of this postulated internal conflict, all based on the premise that the distinction between paragraphs (B)

[5]Offenses classified as "serious" (§ 1192.7, subd. (c)) or "violent" (§ 667.5, subd. (c)) but not listed in Welfare and Institutions Code section 707(b) include voluntary manslaughter (§§ 1192.7, subd. (c)(1), 667.5, subd. (c)(1)); rape committed by means other than force, violence or threat of great bodily harm (§ 1192.7, subd. (c)(3)); simple kidnapping committed other than in the course of a carjacking and without infliction of bodily harm (§ 1192.7, subd. (c)(20)); a felony in which the defendant was alleged and found to have

and (D) of section 667, subdivision (d)(3) is a result of "drafting error." As we demonstrate later, however, each such resolution would require the court to disregard one of the two assertedly conflicting paragraphs or to rewrite some of their provisions. Although we may properly decide upon such a construction or reformation when compelled by necessity and supported by firm evidence of the drafters' true intent (see, e.g., *People* v. *Skinner* (1985) 39 Cal.3d 765, 775 [217 Cal.Rptr. 685, 704 P.2d 752]), we should not do so when the statute is reasonably susceptible to an interpretation that harmonizes all its parts without disregarding or altering any of them. ■ "It is fundamental that legislation should be construed so as to harmonize its various elements without doing violence to its language or spirit." (*Wells* v. *Marina City Properties, Inc.* (1981) 29 Cal.3d 781, 788 [176 Cal.Rptr. 104, 632 P.2d 217].)

■ Rather than rewrite the statute in any way, therefore, we adopt an interpretation that harmonizes paragraphs (B) and (D), without doing violence to the language or spirit of section 667, subdivision (d)(3). In brief, we interpret paragraph (B) as setting out the list of prior juvenile offenses that will qualify as strikes and paragraph (D) as requiring, in addition, that in the prior juvenile proceeding giving rise to the qualifying adjudication the juvenile have been adjudged a ward of the court because of a Welfare and Institutions Code section 707(b) offense, whether or not that offense is the same as the offense currently alleged as a strike.

Our interpretation depends upon a close reading of the statutory language exactly as written. As indicated in its introductory clause, section 667, subdivision (d)(3) delineates the circumstances under which a "prior juvenile adjudication" qualifies as "a prior felony conviction" for Three Strikes purposes. Each paragraph sets forth a necessary circumstance.

Paragraph (A) requires that the juvenile was 16 years old or older "at the time he or she committed the prior offense." (§ 667, subd. (d)(3)(A).) Paragraph (A)'s reference to "the prior offense," in context, can only mean the offense that was the subject of a "prior juvenile adjudication" currently alleged as a "prior felony conviction," i.e., the prior offense currently alleged as a strike.

Paragraph (B), like paragraph (A), sets out a circumstance relating to "[t]he prior offense," requiring such offense to be listed in Welfare and

inflicted great bodily injury (§ 667.5, subd. (c)(8)); and residential burglary (§ 1192.7, subd. (c)(18)).

Offenses listed in Welfare and Institutions Code section 707(b) but not classified as "serious" or "violent" include discharge of a firearm into an inhabited building (§ 707(b)(15)), dissuading a witness or suborning perjury (§ 707(b)(19)), and manufacturing controlled substances (§ 707(b)(20)).

Institutions Code section 707(b) or to be a "serious" or "violent" felony. (§ 667, subd. (d)(3)(B).) Again, "[t]he prior offense" must, in context, be understood to mean the prior offense currently alleged as a strike.

Paragraph (C), unlike paragraphs (A) and (B), does not set forth a circumstance relating to "the prior offense." Instead, it requires that the juvenile "was found" to be fit for juvenile court proceedings. (§ 667, subd. (d)(3)(C).) In context, paragraph (C) requires that the fitness finding, although not necessarily limited to any particular prior offense, must have occurred in the proceeding that led to the prior juvenile adjudication currently alleged as a strike. In this context, had the Legislature intended that the fitness finding could have occurred at *any* time, and not necessarily in the proceeding that led to the prior juvenile adjudication currently alleged as a strike, it would have used language so indicating.

Paragraph (D), like paragraph (C) and unlike paragraphs (A) and (B), does not set forth a circumstance relating to "the prior offense." Instead, it requires that the juvenile "was adjudged" a ward under Welfare and Institutions Code section 602 because of a Welfare and Institutions Code section 707(b) offense. (§ 667, subd. (d)(3)(D).) As in paragraph (C), such adjudication is not necessarily limited to any particular offense alleged in the prior juvenile petition; also as in paragraph (C), however, such adjudication is limited, by context, to the proceeding that led to the prior juvenile adjudication currently alleged as a strike. Here, as with paragraph (C), had the Legislature intended that the adjudication of wardship could have occurred at *any* time, and not necessarily in the proceeding that led to the prior juvenile adjudication currently alleged as a strike, it would have used language so indicating.

Our interpretation of paragraph (D) does violence neither to the language nor to the purpose and spirit of section 667, subdivision (d)(3). Linguistically, our interpretation flows from, and is consistent with, the Legislature's use of significantly different language in paragraphs (C) and (D) than in paragraphs (A) and (B). While paragraphs (A) and (B) expressly state circumstances relating to "the prior offense," i.e., the prior offense currently alleged as a strike, paragraphs (C) and (D) state circumstances unlimited, by their terms, to any particular prior offense: that the juvenile "was," respectively, found fit for juvenile court and adjudged a ward because of at least one Welfare and Institutions Code section 707(b) offense.

Our interpretation is, furthermore, consistent with the general purpose of the Three Strikes statute: "to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously

convicted of serious and/or violent felony offenses." (§ 667, subd. (b).) Under our interpretation, only paragraph (B) limits the set of offenses that may qualify as strikes when the subject of a juvenile adjudication; consistent with the law's general purpose, all "serious" and "violent" offenses may so qualify. Paragraphs (A), (C), and (D), under our interpretation, do not restrict possible qualifying juvenile offenses to a set narrower than the set of serious or violent adult offenses that may qualify as strikes, but merely set forth additional conditions to the use of a qualifying juvenile offense as a strike.

Nor is our interpretation inconsistent with the legislative history relating more specifically to section 667, subdivision (d)(3) and the parallel provision of the Three Strikes initiative, section 1170.12, subdivision (b)(3). A legislative committee analysis of the Three Strikes bill after its amendment to conform to the then-circulating initiative (see *People* v. *Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 505 [53 Cal.Rptr.2d 789, 917 P.2d 628]) noted a juvenile offense would qualify as a strike if "the offense committed was from the list of offenses enumerated in Welfare & Institutions Code Section 707(b) or if it was a serious or violent offense." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 971 (1993-1994 Reg. Sess.) as amended Jan. 26, 1994, p. 8.) Voters on the initiative were later told that under the initiative version of the law, as under the legislative version, "specified" juvenile offenses would qualify as strikes, and that these specified crimes would "generally include the same crimes defined as serious and violent felonies." (Ballot Pamp., Legis. Analyst's Analysis of Prop. 184 as presented to the voters, Gen. Elec. (Nov. 8, 1994) p. 33.) Both of these explanations describe paragraph (B) in a manner consistent with our interpretation, under which the set of possible qualifying juvenile offenses includes both Welfare and Institutions Code section 707(b) offenses and serious or violent offenses. Neither quoted explanation purports to describe the additional requirement for juvenile strikes set forth in paragraph (D).

By their terms, then, paragraph (B) sets out the list of qualifying priors, and paragraph (D) provides that those priors may be counted as strikes so long as the record of the prior juvenile proceeding shows that the adjudication of wardship was premised at least in part upon an offense listed in Welfare and Institutions Code section 707(b). This interpretation harmonizes all parts of section 667, subdivision (d)(3) without altering or adding language to any part or rendering any part superfluous or a nullity.

If, contrary to the interpretation adopted above, paragraphs (B) and (D) of section 667, subdivision (d)(3) are viewed as both setting forth the set of offenses qualifying as juvenile strikes, the paragraphs are in conflict, for some offenses would qualify under one paragraph but not under the other.

As we will now see, all resolutions of this postulated conflict proposed by the parties, embraced in lower court decisions or discovered in our research, would require this court to disregard or rewrite some significant part of the statute. To resolve the conflict, we could:

(1) Disregard paragraph (B), on the theory that its inclusion was inadvertent drafter's error. All juvenile adjudications for Welfare and Institutions Code section 707(b) offenses would, under paragraph (D), qualify as prior felony convictions, assuming, of course, that the requirements of paragraphs (A) and (C) were also met. This was, in essence, the resolution urged by the dissenting justice below.

(2) Disregard paragraph (D), on the theory that its inclusion was inadvertent drafter's error. All juvenile adjudications for Welfare and Institutions Code section 707(b) offenses, "serious" felonies and "violent" felonies would, under paragraph (B), qualify as prior felony·convictions, assuming, again, that the requirements of paragraphs (A) and (C) were also met.

(3) Add references to serious and violent felonies to paragraph (D), on the theory the omission of such language was inadvertent drafter's error. Paragraph (D)'s list of offenses would then duplicate paragraph (B)'s, rendering one of them superfluous. All juvenile adjudications for Welfare and Institutions Code section 707(b) offenses, "serious" offenses and "violent" offenses would, under both paragraphs, qualify as prior felony convictions. This is the resolution urged by the People here and adopted in *People* v. *Griggs*, *supra*, 59 Cal.App.4th at page 561, and by the Court of Appeal majority in this case, which followed *Griggs*, and is endorsed in theory by Justice Baxter.

(4) Change the first "or" in paragraph (B) to "and," on the theory that the use of the disjunctive was inadvertent drafter's error. Only those offenses listed *both* in Welfare and Institutions Code section 707(b) *and* as "serious" or "violent" would qualify. The reference to section 707(b) offenses in paragraph (D) would be rendered superfluous. This is the resolution urged by defendant and by Justice Brown.

(5) A fifth possible construction, unlike the first four, does *not* proceed from the premise that paragraphs (B) and (D) both set forth the set of offenses qualifying as juvenile strikes, and thus avoids the purported conflict. Under this construction, paragraph (B) would be rewritten to refer to the *allegations* contained in the prior juvenile petition rather than to the juvenile court's jurisdictional findings, on the theory that omission of such a reference to the allegations was inadvertent drafter's error.

This theory rests on legislative history: As introduced, the Three Strikes bill provided that a prior juvenile adjudication would qualify as a strike if

"the juvenile was 16 years of age or older at the time of the commission of the offense, the offense *alleged to have been committed* was an offense listed in [Welfare and Institutions Code section 707(b)], the juvenile was found to be a fit and proper subject to be dealt with under the juvenile court law, and the juvenile was adjudged a ward of the juvenile court . . . because the person committed an offense listed in [Welfare and Institutions Code section 707(b)]." (Assem. Bill No. 971 (1993-1994 Reg. Sess.), italics added.)[6] When the bill was amended to conform to the circulating initiative, which itself had been "loosely based" on the original bill (*People* v. *Superior Court (Romero)*, *supra*, 13 Cal.4th at p. 505), these four conditions were lettered (A), (B), (C), and (D), references to "serious" and "violent" felonies were added to paragraph (B), and paragraph (B)'s reference to "the offense alleged to have been committed" was replaced with the enacted statutory phrase, "[t]he prior offense." Pursuant to the fifth possible construction, the last change could be regarded as an inadvertent drafter's error, and the statute could be rewritten to reinstate the original language, eliminating any conflict between paragraphs (B) and (D).

As is evident, all of the above resolutions share a critical, disqualifying feature as interpretations of the Three Strikes law: all would require the court to disregard or rewrite some portion of the statute, violating the fundamental principle that a court should interpret a statute or initiative so as to harmonize and give effect to all its provisions if such an interpretation is consistent with the language and purpose of the act. (*Wells* v. *Marina City Properties, Inc.*, *supra*, 29 Cal.3d at p. 788; *Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].)

Defendant, arguing for resolution (4) above, relies primarily on the "rule of lenity" for interpretation of ambiguous penal statutes. Under that rule (or, more properly, interpretive policy or guideline), we generally "construe a penal statute as favorably to the defendant as its language and the circumstances of its application may reasonably permit . . . ." (*Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 631 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420].) The lenity policy is of little help here, however,

---

[6]This formulation appears to have been drawn from section 12021, subdivision (e), the only statute we have been able to locate using the same language. At the time Assembly Bill No. 971 was introduced, section 12021, subdivision (e) provided in relevant part: "Any person who (1) is *alleged to have committed an offense listed in subdivision (b) of Section 707* of the Welfare and Institutions Code, (2) is found to be a fit and proper subject to be dealt with under the juvenile court law, and (3) is subsequently adjudged a ward of the juvenile court within the meaning of Section 602 of the Welfare and Institutions Code because the person committed an offense listed in subdivision (b) of Section 707 of the Welfare and Institutions Code shall not own, or have in his or her possession or under his or her custody or control, any firearm until the age of 30 years." (§ 12021, as amended by Stats. 1991, ch. 955, § 3, p. 4453; see 51C West's Ann. Pen. Code (1992 ed.) § 12021, p. 206, italics added.)

because the language of section 667, subdivision (d)(3) does *not* reasonably permit us to interpret the first "or" in paragraph (B) as meaning "and." Such a construction can only be reached by rewriting the statute's language.

 The rule of lenity provides guidance when the language of a penal statute is "susceptible" of two or more interpretations. (*People* v. *Overstreet* (1986) 42 Cal.3d 891, 896 [231 Cal.Rptr. 213, 726 P.2d 1288].) But the word "or," at least in the context of paragraph (B), is not susceptible to being understood as "and," any more than paragraph (D)'s reference to "an offense listed in subdivision (b) of Section 707 of the Welfare and Institutions Code" is susceptible to being understood as referring, as well, to offenses that are *not* listed in Welfare and Institutions Code section 707(b) but are classified as "serious" or "violent." If, perhaps, the court were forced to choose between two possible ways of rewriting a penal statute to avoid an internal conflict or absurdity, we might apply a variation on the rule of lenity and choose the rewriting more favorable to the defendant. As demonstrated earlier, however, we are not faced with that problem here, because we are able to harmonize paragraphs (B) and (D) without rewriting or disregarding the language of either.

Defendant also argues that the first "or" in paragraph (B) should be read as "and" because an "equal protection problem" arises if paragraph (B) is read, according to its terms, as providing a broader set of qualifying offenses for juvenile strikes (offenses listed in Welfare and Institutions Code section 707(b) *or* classified as serious or violent) than for adult strikes (only serious or violent felonies). Defendant contends there is "no rational basis for punishing persons who commit the same crime more harshly if they were adjudicated a ward of the court at age 16 . . . rather than [convicted] at age 20." As we are not faced here with any assertedly unconstitutional application of the statute, however, we have no occasion to address defendant's constitutional argument on the merits. Under our interpretation of section 667, subdivision (d)(3), defendant is not treated more harshly because his prior offenses were committed as a juvenile. To the contrary, as shall be seen below, he benefits from that fact; because the alleged prior conviction at issue does not meet the requirement of paragraph (D), applicable only to juvenile adjudications, it does not count as a strike, though it would have had it been the subject of an adult conviction, in that residential burglary is a serious felony qualifying as a strike under section 667, subdivision (d)(1). Defendant, in short, lacks standing to assert the equal protection claims of hypothetical felons who may be treated more harshly because their prior offenses were committed as juveniles. (See, e.g., *Rubio* v. *Superior Court* (1979) 24 Cal.3d 93, 103 [154 Cal.Rptr. 734, 593 P.2d 595]; *Estate of Horman* (1971) 5 Cal.3d 62, 77-78 [95 Cal.Rptr. 433, 485 P.2d 785].) The

question whether section 667, subdivision (d)(3) can be constitutionally applied to a felon whose alleged prior conviction is for an offense listed in Welfare and Institutions Code section 707(b), but not categorized as a serious or violent felony, must await a case in which it is actually presented.

The Attorney General, emphasizing the express legislative intent to increase punishment for felons who "have been previously convicted of serious and/or violent felony offenses" (§ 667, subd. (b)), urges us to interpret paragraph (B) to include as strikes juvenile adjudications for all such serious or violent offenses, regardless of whether the offense is also listed in Welfare and Institutions Code section 707(b). We agree the language of paragraph (B), as well as the stated legislative intent, calls for such an interpretation of *that* paragraph. Neither the language of paragraph (B), however, nor the intent expressed in section 667, subdivision (b), requires us to disregard or rewrite the language of *paragraph (D)*, which requires, separately and without conflict, that the defendant was, in the prior juvenile proceeding, adjudged a ward of the juvenile court because of a section 707(b) offense.

The apparent premise of the Attorney General's argument is that, in order to implement the intent expressed in section 667, subdivision (b) to ensure greater punishment and longer prison terms for recidivists who have been previously convicted of a serious or violent felony, *all* prior adjudications for serious or violent felonies must be counted as strikes. That was patently not the Legislature's intent, however, as it included three additional requirements (paragraphs (A), (C) and (D)) limiting the juvenile adjudications that so qualify. (Cf. *People* v. *Superior Court (Romero)*, *supra*, 13 Cal.4th at p. 528 ["But to say the intent of a law was to restrict judicial discretion begs the question of *how* judicial discretion was to be restricted. The answer to that question can be found only by examining the language of the act." (Italics in original.)].)

In an argument similar to the Attorney General's, Justice Baxter, who nonetheless joins in our interpretation of paragraph (D), complains it will "partially gut" paragraph (B)'s list of qualifying offenses. (Conc. opn. of Baxter, J., *post*, at p. 17.) We disagree. Paragraphs (A), (B), (C), and (D) all state independent necessary requirements for use of a prior juvenile adjudication. That a given prior adjudication may meet one of these independent requirements but not another, and therefore be unusable as a strike, does not "gut" any part of the former requirement. For example, there are presumably a number of cases in which juveniles under the age of 16 have suffered adjudications for offenses listed in paragraph (B). That these adjudications do not meet the age requirement of paragraph (A), and therefore could not be

used as prior felony convictions, does not render any part of paragraph (B) nugatory. The same is true for adjudications that satisfy paragraph (B) but not paragraph (D).

Justice Baxter also argues that paragraph (D)'s language can be explained only by drafting error. (Conc. opn. of Baxter, J., *post*, at pp. 18-19.) The presence or absence in the prior proceeding of an adjudication for an offense listed in Welfare and Institutions Code section 707(b) is, in his view, a "mere fortuity" that cannot rationally affect the usability of an otherwise qualifying prior adjudication. (Conc. opn. of Baxter, J., *post*, at p. 21.) Again, we disagree. Since the Legislature, the initiative drafters and the voters have enacted a scheme that includes an explicit requirement, for juvenile adjudications, that the juvenile was at the same time adjudged a ward because of a Welfare and Institutions Code section 707(b) offense, we must presume the Legislature, the drafters and the voters did *not* regard that circumstance as a "fortuity." Had they thought the requirement of a Welfare and Institutions Code section 707(b) offense unimportant or anomalous to the purposes of the Three Strikes law, they would presumably have omitted any reference at all to that section. As written, the requirement of paragraph (D) may be seen as serving the purpose of ensuring that the crimes adjudicated in the prior proceeding included at least one offense "so serious as to raise a presumption of unfitness for treatment in the juvenile court system." (Conc. & dis. opn. of Brown, J., *post*, at p. 24.)

To summarize, we interpret section 667, subdivision (d)(3) according to its terms, without adopting any of the rewritings proposed by the parties and lower courts. Under paragraph (B), a prior juvenile adjudication qualifies as a prior felony conviction for Three Strikes purposes only if the prior offense is listed in Welfare and Institutions Code section 707(b) or is classified as "serious" or "violent." Paragraph (D) does not modify or conflict with paragraph (B), but states a separate, additional requirement: the prior adjudication qualifies as a prior felony conviction only if the defendant, in the prior juvenile proceeding, was adjudged a ward because of at least one offense listed in section 707(b). *People* v. *Griggs*, *supra*, 59 Cal.App.4th 557, which adopted a construction of section 667, subdivision (d)(3) inconsistent with ours, is disapproved.

Our conclusion does not rest on the premise that all, or any particular, legislators or voters who enacted the Three Strikes law in either its legislative or initiative forms subjectively contemplated this interpretation of paragraph (D). The lack of parallelism between the cross-referenced lists of offenses in paragraphs (B) and (D) may well be the result of an oversight by the drafters of the Three Strikes initiative and by the legislators who

subsequently enacted the text of the initiative as a statute, rather than a product of careful legislative craftsmanship.[7] For purposes of interpreting these statutes, however, it matters not whether the drafters, voters or legislators consciously considered all the effects and interrelationships of the provisions they wrote and enacted. We must take the language of section 667, subdivision (d)(3), and section 1170.12, subdivision (b)(3), as it was passed into law, and must, if possible without doing violence to the language and spirit of the law, interpret it so as to harmonize and give effect to all its provisions.[8]

In this respect, the Attorney General's proposal to rewrite paragraph (D) by adding cross-references to the statutory lists of serious and violent felonies ignores necessary limitations on our proper role in statutory interpretation. Consistent with the separation of powers doctrine (Cal. Const., art. III, § 3), we have previously limited ourselves to relatively minor rewriting of statutes and, even then, only resorted to that drastic tool of construction when it has been obvious that a word or number had been erroneously used or omitted. (See, e.g., *People* v. *Skinner, supra,* 39 Cal.3d at p. 775 [court found it "clear" that the word "and" was "erroneously used" in place of

---

[7]The Three Strikes bill, when originally introduced on March 1, 1993, provided that a prior juvenile adjudication would qualify as a strike if "the juvenile was 16 years of age or older at the time of the commission of the offense, the offense alleged to have been committed was an offense listed in subdivision (b) of Section 707 of the Welfare and Institutions Code, the juvenile was found to be a fit and proper subject to be dealt with under the juvenile court law, and the juvenile was adjudged a ward of the juvenile court within the meaning of Section 602 of the Welfare and Institutions Code because the person committed an offense listed in subdivision (b) of Section 707 of the Welfare and Institutions Code." (Assem. Bill No. 971 (1993-1994 Reg. Sess.).) The bill's original cross-references—both of them to Welfare and Institutions Code section 707(b) alone—were parallel. While the bill was pending in the Legislature, however, the petition to place the initiative version of the law—which contained the nonparallel cross-references with which we are here concerned—began circulating. (*People* v. *Superior Court (Romero), supra,* 13 Cal.4th at p. 505.) By amendments of January 3 and January 13, 1994, the Assembly then substituted nearly verbatim the provisions of the circulating initiative relating, inter alia, to prior juvenile adjudications, thus introducing into the legislative bill the same lack of parallelism originally created by the initiative drafters. (Compare Ballot Pamp., text of Prop. 184, Gen. Elec. (Nov. 8, 1994) p. 65, with Assem. Amend. to Assem. Bill No. 971 (1993-1994 Reg. Sess.) Jan. 13, 1994.)

[8]Justice Brown reads the above discussion as an acknowledgement that "in all probability" our interpretation was not subjectively contemplated by the Legislature and electorate; on that basis she argues our interpretation violates the principle that we should interpret statutes so as to effectuate legislative intent. (Conc. & dis. opn. of Brown, J., *post,* at p. 23.) With respect, she misreads this opinion. We do not say anything regarding the "probability" any or all legislators or voters subjectively contemplated a given meaning; we simply do not know. Nor, of course, do we dispute that determining legislative intent is the goal of statutory interpretation; we simply apply the principle that, in general, a statute's words are the most reliable indicator of legislative intent. (See, e.g., *People* v. *Gardeley* (1996) 14 Cal.4th 605, 621 [59 Cal.Rptr.2d 356, 927 P.2d 713].)

"or"]; *In re Thierry S.* (1977) 19 Cal.3d 727, 741, fn. 13 [139 Cal.Rptr. 708, 566 P.2d 610] ["obvious mistake" in statute's cross-reference to "Section 625" was corrected to read "Section 2," so as to reflect the Legislature's "clear intent"]; *People* v. *Troutman* (1921) 187 Cal. 313, 316-317 [201 P. 928] ["evident" drafting error—statute's reference to "Part Two"—corrected to read "Part One" in order to reflect Legislature's intent]; *Washburn* v. *Lyons* (1893) 97 Cal. 314, 315 [32 P. 310] ["very clear" drafting error—use of "and" instead of "or"—was reformed to reflect Legislature's intent].)[9] In the present case, by contrast, that any of the several possible rewritings outlined earlier would effectuate the subjective intent of the drafters and enactors of the Three Strikes laws (much less which one would best do so) is anything but obvious, and the rewriting involved in most of them would be far from minor. The Attorney General was unable to cite, nor has our research disclosed, any case in which this court has cured an asserted drafting error by grafting an entire substantive clause onto a statute. As the divergent views of Justices Baxter and Brown illustrate, reasonable people can differ as to how this statute would best be "corrected" if we undertook to rewrite it. In these circumstances, we must limit ourselves to interpreting the law as written and leave for the People and the Legislature the task of revising it as they deem wise.

In the proceeding leading to the prior juvenile adjudication alleged and imposed against defendant as a prior felony conviction, the only felony offense for which defendant was adjudged a ward of the juvenile court was burglary of an inhabited dwelling, which is not an offense listed in Welfare and Institutions Code section 707(b). Although that offense is classified as serious and would, therefore, qualify as a strike under paragraph (B), the separate requirement of paragraph (D), that the juvenile was adjudged a ward of the juvenile court because of a section 707(b) offense, was not satisfied. The trial court therefore erred in sentencing defendant under section 667, subdivision (e)(1).

## Disposition

The judgment of the Court of Appeal is reversed. The matter is remanded to the Court of Appeal with directions to remand to the trial court for new proceedings on sentence.

George, C. J., Mosk, J., Kennard, J., and Chin, J., concurred.

---

[9]We speak here only of rewriting to correct drafting or clerical errors. A different set of considerations and limitations governs the reformation of statutes to preserve their constitutionality. (See *Kopp* v. *Fair Pol. Practices Com.* (1995) 11 Cal.4th 607 [47 Cal.Rptr.2d 108, 905 P.2d 1248].)

**MOSK, J.**—I concur in the majority opinion.

I write merely to concede that no governmental system is without possibility of error or omission.

In *People* v. *Skinner* (1985) 39 Cal.3d 765 [217 Cal.Rptr. 685, 704 P.2d 752], I wrote at some length on my own behalf to suggest that the grievous error made in an initiative measure—using "and" instead of "or" in a crucial context—would not have been made if the proposal had advanced its laborious way through the legislative process. I observed that the obvious error "would have been discovered in the traditional legislative process. In an assembly committee, on the floor of the assembly, in a senate committee, on the floor of the senate, in the Governor's veto opportunity, such inadvertence would likely have been detected, or if the choice of words was deliberate, such intent would have been clearly declared. In an initiative measure, however, no revision opportunity is possible and no legislative intent is available . . . ." (*Id.* at p. 785 (conc. opn. of Mosk, J.).)

In the instant matter, we have an enigmatic result, attributable at least in part to the very legislative process I extolled so enthusiastically in *Skinner.*

I now reach the inevitable conclusion that no process, however well structured, is certain to be free of potential error or uncertainty. *Skinner* was one example. The instant case is but another.

**BAXTER, J., Concurring.—**

I

I agree with the conclusion of the Court of Appeal in *People* v. *Griggs* (1997) 59 Cal.App.4th 557, 561 [69 Cal.Rptr.2d 174] (*Griggs*), that "[r]egarding [Penal Code] section 667, subdivision (d)(3)(D), the failure to include those offenses 'described in paragraph (1) or (2) as a felony' (§ 667, subd. (d)(3)(B)) must be viewed as a drafting oversight."[1] I share this conclusion because I find it highly unlikely the drafters of the "Three Strikes" law did not intend that prior juvenile adjudications of residential burglary (and certain other felonies identified below) committed by 16- or 17-year-old juveniles could not under most circumstances be counted as "prior conviction[s] of a felony" (§ 667, subd. (d)) for Three Strikes sentencing purposes.

Accepting that conclusion, I am placed in an uncomfortable position in this case. To follow *Griggs* (as did the Court of Appeal below) would require

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

rewriting section 667, subdivision (d)(3)(D) by adding a parallel reference to the offenses "described in paragraph (1) or (2) as a felony" in order to cross-reference the lists of serious or violent felonies referenced in section 667, subdivision (d)(3)(B). As the majority observe, "[c]onsistent with the separation of powers doctrine (Cal. Const., art. III, § 3), we have previously limited ourselves to relatively minor rewriting of statutes and, even then, only resorted to that drastic tool of construction when it has been obvious that a word or number had been erroneously used or omitted. [Citations.]" (Maj. opn., *ante*, at pp. 14-15.)

On the other hand, giving effect to the literal language of section 667, subdivision (d)(3)(D), as I shall explain, leads to anomalous results at odds with the purpose and intent behind the Three Strikes law.

Faced with this dilemma, consideration of the separation of powers doctrine leads me to join in the majority's conclusion that "[i]n these circumstances, we must limit ourselves to interpreting the law as written, and leave for the People and the Legislature the task of revising it as they deem wise." (Maj. opn., *ante*, at p. 15.) If the Legislature is unsatisfied with the interpretation the statutory rules of construction compel this court to place on section 667, subdivision (d)(3)(D) as presently worded, it can amend that provision with a parallel reference to the offenses "described in paragraph (1) or (2) as a felony" to more accurately reflect its intent. (§ 667, subd. (j).)

## II

In prescribing a "wardship adjudication" requirement in section 667, subdivision (d)(3)(D) as the fourth prong for determining whether a prior juvenile adjudication qualifies as a "strike" for Three Strikes sentencing purposes, it is unlikely the Legislature intended to partially gut the source list of qualifying prior juvenile adjudications found in section 667, subdivision (d)(3)(B).[2] Yet section 667, subdivision (d)(3)(D), as presently worded and if literally interpreted, does just that.

The formula set forth in section 667, subdivision (d)(3) for determining which prior juvenile adjudications qualify as strikes under the Three Strikes law was obviously not intended to be convoluted or overly complicated. There are four prongs which together determine whether a prior juvenile adjudication will qualify for Three Strikes use.

---

[2]Indeed, one legislative committee report noted that "Under this bill, a prior juvenile adjudication *would count as a prior conviction for sentencing* purposes. This provision *would apply* if the person was 16 or older when adjudicated, and the offense committed was from the list of offenses enumerated in Welfare & Institutions Code Section 707(b) or if it was a serious or violent offense." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 971 (1993-1994 Reg. Sess.) as amended Jan. 26, 1994, p. 9, italics added.)

Section 667, subdivision (d)(3)(A) requires that the prior juvenile adjudication was suffered when defendant was 16 or 17 years of age. No matter what crimes a defendant committed prior to his 16th birthday, prior juvenile adjudications of such offenses cannot be used for Three Strikes purposes.

Section 667, subdivision (d)(3)(B) (paragraph (B)) is the clause listing the qualifying offenses. It includes the crimes or circumstances listed in Welfare and Institutions Code section 707, subdivision (b) on June 30, 1993[3]— approximately 24 violent or serious crimes and several criminal circumstances that reflect heightened violence or seriousness (e.g., gun use, infliction of great bodily injury, victim over 60 years of age, disabled, or in a wheelchair). It also includes all other offenses that qualify as *adult* strikes under "paragraphs (1) and (2)" of section 667, subdivision (d). Prior felony convictions qualifying as adult strikes include all *violent* felonies listed in section 667.5, subdivision (c) (consisting of approximately eight of the most violent felonies) and all *serious* felonies listed in section 1192.7, subdivision (c) (a list of thirty-four "serious" felonies). Residential burglary is included in the section 1192.7, subdivision (c) "serious felony" listing.

Section 667, subdivision (d)(3)(C) is the clause requiring that "[t]he juvenile was found to be a fit and proper subject to be dealt with under the juvenile court law." In *People* v. *Davis* (1997) 15 Cal.4th 1096 [64 Cal.Rptr.2d 879, 938 P.2d 938], we held that the fitness finding need not have been express.

Finally, the clause with which we are here concerned—section 667, subdivision (d)(3)(D) (paragraph (D))—requires that the juvenile "was adjudged a ward of the juvenile court within the meaning of Section 602 of the Welfare and Institutions Code because the person committed an offense listed in subdivision (b) of Section 707 of the Welfare and Institutions Code."

As the *Griggs* court concluded, "Regarding section 667, subdivision (d)(3)(D), the failure to include those offenses 'described in paragraph (1) or (2) as a felony' (§ 667, subd. (d)(3)(B)) must be viewed as a drafting oversight. There is no other rational explanation for the omission. It would make no sense to require a prior offense to be listed in statute A—even if it was not listed in statute B—but then to bar use of the resulting adjudication because the adjudicated offense was not listed in statute B. We will not presume the Legislature intended such a bizarre result. Moreover, it makes

---

[3]We need to refer back to the version of section 707, subdivision (b) in effect on June 30, 1993, because the Three Strikes law tells us that whenever it is referencing another statute, it is referring to the statute as it existed on that date. (§ 667, subd. (h).)

no sense—and would frustrate the express intent of the three strikes law (see § 667, subd. (b))—to allow the use of juvenile adjudications as 'strikes' but to permit only adults to incur a 'strike' as the result of an offense listed in section 667.5, subdivision (c), or section 1192.7, subdivision (c)." (*Griggs, supra,* 59 Cal.App.4th 557 at p. 561.)

If the single sentence comprising paragraph (D) ended with the phrase "or described in paragraph (1) or (2) as a felony," the symmetry between paragraphs (B) and (D) of section 667, subdivision (d)(3) would be maintained, and the four-pronged test for qualifying prior juvenile adjudications as Three Strikes priors would be unambiguous, simple to apply, and most importantly, fully consistent with the underlying intent and purpose of the Three Strikes law. Like the *Griggs* court and the Court of Appeal below, I conclude the failure to include in paragraph (D) a parallel reference to those offenses "described in paragraph (1) or (2) as a felony" (as is found in paragraph (B)) was in all probability a drafting error or oversight.

It would come as no surprise to me were the Legislature to amend paragraph (D) of section 667, subdivision (d)(3) in the wake of our opinion in this case. Interpreting paragraph (D) strictly and literally renders a key portion of paragraph (B) nugatory. Serious or violent felonies as defined in sections 667.5, subdivision (c) and 1192.7, subdivision (c)—including the offense of residential burglary in question here—were plainly intended to be *included* among the offenses that could qualify as prior juvenile adjudications under the Three Strikes law. Under a literal interpretation of paragraph (D) as currently worded, however, a defendant can have one, five, ten or any number of prior juvenile adjudications of any combination of those offenses which are serious or violent felonies under section 667.5, subdivision (c) or section 1192.7, subdivision (c), but which are not also listed in Welfare and Institutions Code section 707, subdivision (b), and even have been declared a ward of the juvenile court in connection with some or all such prior juvenile adjudications, and yet *none* of those prior juvenile adjudications could be used for Three Strikes sentencing purposes.

The offenses falling into this category, in addition to residential burglary (§ 1192.7, subd. (c)(18)), include unarmed robbery (§ 1192.7, subd. (c)(19)), voluntary manslaughter (§§ 1192.7, subd. (c)(1), 667.5, subd. (c)(1)), rape committed by means other than force, violence or threat of great bodily harm (§ 1192.7, subd. (c)(3)), simple kidnapping committed other than in the course of a carjacking and without infliction of bodily harm (§ 1192.7, subd. (c)(20)), and *any* felony in which the defendant was alleged and found to have inflicted great bodily injury (§ 667.5, subd. (c)(8)).

Why would the Legislature have *excluded* from the scope of the Three Strikes law prior juvenile adjudications for residential burglary, and the

other offenses noted above, simply because the defendant had not also been declared a ward of the court in connection with a prior juvenile adjudication of a Welfare and Institutions Code section 707, subdivision (b)-listed offense in that earlier proceeding? Such a construction of paragraph (D) effectively eliminates a whole category of felonies referenced in paragraph (B) that were obviously intended to be included as potentially qualifying Three Strikes prior juvenile adjudications, and in so doing contravenes the spirit, if not the letter, of the habitual offender enhancement provisions of the Three Strikes law.

The linchpin of the fourth prong embodied in paragraph (D) is that the defendant *had to have been adjudged a ward of the juvenile court in connection with the prior juvenile adjudication under consideration for Three Strikes use* in order for it to qualify as a Three Strikes prior. (See § 667, subd. (d)(3) ["A prior juvenile adjudication shall constitute a prior felony conviction for purposes of sentence enhancement if . . . ."].) It is most reasonable to presume the Legislature believed prior juvenile adjudications of any felony referenced in the source list of qualifying offenses in paragraph (B) *for which the defendant had been adjudged a ward of the juvenile court* were inherently more serious, and for that reason could qualify as strikes under the Three Strikes law, in contrast to prior juvenile adjudications of any such offense for which the juvenile had not been declared a ward of the court. In this regard, it is important to note that a juvenile who comes within the jurisdiction of the juvenile court within the meaning of Welfare and Institutions Code section 602 for having committed any offense referenced in paragraph (B) does *not* necessarily have to be declared a ward of the juvenile court; lesser dispositions such as probation are an option. (Welf. & Inst. Code, § 725.) The Legislature appears to have concluded, reasonably so, that *a declaration of wardship in connection with the prior juvenile adjudication under question* should serve as one of the factors distinguishing prior juvenile adjudications that qualify for Three Strikes treatment from those that do not.

Under a literal interpretation of paragraph (D) as presently worded, a defendant who has a single or multiple prior juvenile adjudications for residential burglary, unarmed robbery, voluntary manslaughter, rape committed by means other than force, violence, or threat of great bodily harm, simple kidnapping without infliction of bodily harm, or *any* crime for which he was found to have inflicted great bodily injury upon his victim, and who was adjudged a ward of the juvenile court in connection with some or all such offenses, escapes the reach of the Three Strikes law on the fortuity that he was not also adjudged a ward of the juvenile court in connection with at least one Welfare and Institutions Code section 707, subdivision (b)-listed offense.

And under a literal interpretation of paragraph (D) as presently worded, even if in the prior juvenile proceeding giving rise to the qualifying adjudication the juvenile *had* been adjudged a ward of the court because of a Welfare and Institutions Code section 707, subdivision (b) offense, whether or not that offense is the same as the offense currently alleged as a strike, such would still not fully effectuate the drafters' likely intent behind the four-pronged qualifying test because it would still lead to anomalous results: A prior juvenile adjudication for residential burglary or one of the other felonies noted above would qualify as a Three Strikes prior only if the juvenile happened to have also been declared a ward of the juvenile court in the same proceeding in connection with a Welfare and Institutions Code section 707, subdivision (b)-listed offense—whereas the juvenile's second or third adjudication for repeats of that same offense later on in his juvenile criminal career, even if leading to a wardship declaration for such offense, will not later qualify as a Three Strikes prior if a wardship declaration was not also made in connection with a Welfare and Institutions Code section 707, subdivision (b)-listed offense in that later proceeding. Why should a string of prior juvenile adjudications of the same offense be treated differently for Three Strikes purposes on the mere fortuity that some arose from proceedings in which a declaration of wardship was also made in connection with another (Welf. & Inst. Code, § 707, subd. (b)) offense, and some did not?

## III

I conclude the drafters of the Three Strikes law intended that paragraph (D) of section 667, subdivision (d)(3) prescribe a simple and straightforward requirement that a wardship declaration had to have been made in connection with the prior juvenile adjudication of any offense contained in the source list in paragraph (B) presently under scrutiny for qualification as a Three Strikes prior felony conviction. The omission in paragraph (D) of a parallel reference to offenses "described in paragraph (1) or (2) as a felony" (as found in paragraph (B)) was almost certainly drafters' error or oversight, as inclusion of such a parallel reference would harmonize all four prongs of the statutory scheme and most clearly effectuate the purpose and intent behind the Three Strikes law.[4]

---

[4]Although Justice Brown and I share many of the same concerns regarding the discordance between a strict and literal interpretation of paragraphs (B) and (D) of section 667, subdivision (d)(3) as presently worded, and the probable legislative intent underlying the statutory scheme, I cannot subscribe to her ultimate construction of the statute. Substituting the word "and" for "or" in paragraph (B) may be one way to address the equal protection concern hypothetically raised by this defendant, but it hardly "harmonizes the remaining provisions of section 667(d)(3) with minimal judicial interference." (See conc. & dis. opn. of Brown, J.,

Nevertheless, consideration of the proper role of this court under the separation of powers doctrine compels me to join in the majority's conclusion that it is not the proper function of this court to "rewrite" statutory language to comport with legislative intent. It bears repeating: If the Legislature is unsatisfied with the construction we are compelled to place on paragraph (D) of section 667, subdivision (d)(3) as that clause is presently worded, it can amend the provision with a parallel reference to offenses "described in paragraph (1) or (2) as a felony" if such amendment will more accurately reflect its original intent. (§ 667, subd. (j).)

**BROWN, J.,** Concurring and Dissenting.—I concur in the determination that defendant's juvenile adjudication for residential burglary is not a strike as defined by Penal Code section 667, subdivision (d)(3) (section 667(d)(3); all unspecified statutory references are to the Penal Code). I cannot, however, subscribe to an interpretation of the statute that runs afoul of so many fundamental principles of statutory construction.

Resolving the internal inconsistencies in section 667(d)(3) has evoked considerable interpretive creativity. The Attorney General has urged the court to find "drafter's error" and to rewrite section 667(d)(3) so as to bring subdivision (d)(3)(D) in parallel with subdivision (d)(3)(B) because this best effectuates the intent of the Legislature "to ensure longer prison sentences and greater punishment" for recidivists. (§ 667, subd. (b); see *People* v. *Griggs* (1997) 59 Cal.App.4th 557 [69 Cal.Rptr.2d 174].) Defendant advocates a more modest reformation, arguing that a substitution of "and" for "or" in section 667(d)(3)(B) renders the statute intelligible while preserving its constitutionality. Maintaining a hands-off approach, the majority opts for a construction that harmonizes paragraphs (B) and (D) as written on the basis that each provision refers to a different "offense" in establishing a juvenile adjudication as a qualifying prior.

*post*, at p. 26.) Under that construction, prior juvenile adjudications for the offenses I have noted, which are listed as violent or serious felonies in sections 667.5, subdivision (c) and 1192.7, subdivision (c), but which are not also listed in Welfare and Institutions Code section 707, subdivision (b), could *never* qualify as strikes for Three Strikes sentencing purposes, a result even further at odds with the probable legislative intent than the strict and literal reading of the statute adopted by the majority. The Legislature has already signaled the manner in which a constitutional or other defect in the statutory scheme should be remedied—subdivision (i) of section 667 provides that, "If any provision of subdivisions (b) to (h), inclusive, or the application thereof to any person or circumstance is held invalid, that invalidity shall not affect any other provisions or applications of those subdivisions which can be given effect without the invalid provision or application, and to this end the provisions of those subdivisions are severable." In my view, the constitutional concern would most appropriately be addressed "with minimal judicial interference" in a case in which it is actually presented, and then by simply declaring prior juvenile adjudications of the felonies giving rise to the equal protection problem unavailable for Three Strikes sentencing purposes by operation of subdivision (i).

Granted, the latter construction does reconcile language that otherwise appears inherently conflicting. But that is its only virtue. The majority candidly acknowledges that in all probability neither the Legislature nor the electorate "subjectively contemplated this interpretation of paragraph (D)." (Maj. opn., *ante*, at p. 13.) While commendable, this candor cannot absolve a blatant transgression of the cardinal tenet that courts are to construe statutes so as "to ascertain and effectuate legislative intent" (*People* v. *Gardeley* (1996) 14 Cal.4th 605, 621 [59 Cal.Rptr.2d 356, 927 P.2d 713]), irrespective of the literal language. (See, e.g., *Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)

Several reasons suggest the majority is correct in perceiving its construction to be at odds with the likely intent of section 667(d)(3)(D). First, it admittedly "depends upon a close reading of the statutory language exactly as written." (Maj. opn., *ante*, at p. 6.) In fact, it depends upon a significant amount of legal parsing and even then results in an incredibly awkward "harmonization" of the statute's various provisions. If the Legislature and electorate had actually meant to accomplish such an end, they undoubtedly would have expressed their intent more plainly and directly.

Second, the majority's construction of paragraph (3) of section 667(d) is not consistent with the terms of paragraphs (1) and (2) defining which adult convictions will constitute a "prior conviction of a felony" for purposes of the three strikes law. Under paragraphs (1) and (2) of section 667(d), the qualifying offenses are identified by reference to established external standards. A prior conviction for "[a]ny offense defined in subdivision (c) of Section 667.5 as a violent felony or any offense defined in subdivision (c) of Section 1192.7 as a serious felony in this state" will *always* be a strike, whether committed in California or elsewhere. (§ 667, subd. (d)(1), (2).) Thus, any adult convicted of residential burglary will have a qualifying prior independent of any other consideration. For juveniles, however, a residential burglary may or may not constitute a strike depending upon a wardship adjudication for a separate Welfare and Institutions Code section 707, subdivision (b), offense.

Given the definitional structure of section 667, subdivision (d)(1) and (2), no reason appears to interject this multiadjudication criterion into section 667(d)(3). It does not assure that only the most serious juvenile adjudications are rendered strikes or that recidivists necessarily receive greater punishment. For example, a residential burglary committed by a juvenile who broke into someone's house to take food because he was hungry after escaping from juvenile hall would be a strike. (See Welf. & Inst. Code, § 707, subd. (b)(22).) However, a juvenile who entered and took stereo

equipment, jewelry, and guns but who was not on the lam would not have a strike. The disparity in culpability is evident; the disparity in consequences is anything but.

Finally, in a related vein, the majority's interpretation complicates pleading and proof whenever the prior is serious or violent but not listed in Welfare and Institutions Code section 707, subdivision (b). The prosecution cannot simply allege a juvenile adjudication by reference to a set list of qualifying offenses, as it could under defendant's proffered construction. Thus, for voluntary manslaughter (§§ 1192.7, subd. (c)(1), 667.5, subd. (c)(1)), rape committed by means other than force, violence, or threat of great bodily harm (§ 1192.7, subd. (c)(3)), simple kidnapping committed other than in the course of a carjacking and without infliction of bodily harm (§ 1192.7, subd. (c)(20)), a felony in which the defendant was alleged and found to have inflicted great bodily injury (§ 667.5, subd. (c)(8)), and residential burglary (§ 1192.7, subd. (c)(18)), further allegation of a Welfare and Institutions Code section 707, subdivision (b), wardship finding is essential.

Although defendant's construction would eliminate these latter offenses as strikes for juveniles, that result is not irrational. Historically, an order adjudging a minor to be a ward of the court has not been treated as a criminal conviction "for any purpose." (Welf. & Inst. Code, § 203; see also *In re Joseph B.* (1983) 34 Cal.3d 952 [196 Cal.Rptr. 348, 671 P.2d 852] [no certificate of probable cause required for juvenile to contest adjudication based on admission]; *In re Eric J.* (1979) 25 Cal.3d 522 [159 Cal.Rptr. 317, 601 P.2d 549] [juveniles adjudged wards of the court not similarly situated with adults in criminal justice system]; *People* v. *West* (1984) 154 Cal.App.3d 100, 106, 110 [201 Cal.Rptr. 63] [juvenile adjudication not prior conviction under section 667, subdivision (a)]; *In re Anthony R.* (1984) 154 Cal.App.3d 772 [201 Cal.Rptr. 299] [juvenile adjudication not prior conviction for petty theft with prior].) The Legislature and electorate may well have considered that a sharp break in this practice should be limited to those offenses that are both serious or violent and so serious as to raise a presumption of unfitness for treatment in the juvenile court system. Moreover, for those crimes not meeting this convergence, a juvenile 16 years old or older could be tried as an adult—and thus acquire a strike upon conviction—if the circumstances, including the gravity of the offense, make that appropriate. (See Welf. & Inst. Code, § 707, subd. (a).)

Nor does this limit on qualifying offenses conflict with legislative intent. Both the Legislature and the electorate sought to ensure longer sentences for recidivists, but that goal in and of itself provides little guidance in determining which juvenile adjudications should be treated as prior convictions. (See

*People* v. *Davis* (1997) 15 Cal.4th 1096, 1113 [64 Cal.Rptr.2d 879, 938 P.2d 938] (dis. opn. of Kennard, J.); cf. *People* v. *Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 528 [53 Cal.Rptr.2d 789, 917 P.2d 628] ["But to say the intent of a law was to restrict judicial discretion begs the question of *how* judicial discretion was to be restricted."].) Under any construction, section 667(d)(3) ensures that some defendants with juvenile adjudications will suffer increased punishment, marking a significant departure from previous law.

The gaps in correlating the majority's interpretation with likely legislative intent alone should have sent the majority back to the drawing board, but these are not the only shortcomings. Its construction also violates the rule that "[a] statute should be construed whenever possible so as to preserve its constitutionality. [Citations.]" (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) This principle cannot be sidestepped on the theory that "we are not faced here with any assertedly unconstitutional application of the statute," and therefore defendant lacks standing to raise an equal protection concern. (Maj. opn., *ante*, at p. 11.) This evasion misses the point: the court's task is to interpret a statute rife with uncertainty. " '[E]very statute must be construed in the light of the constitutional restrictions upon the power of the legislature so that it is necessary to consider those constitutional provisions in arriving at the proper interpretation of the statute.' " (*County of Los Angeles* v. *Riley* (1936) 6 Cal.2d 625, 628-629 [59 P.2d 139, 106 A.L.R. 903].) "The Constitution and the statute are to be read together. If the terms of a statute are by fair and reasonable interpretation capable of a meaning consistent with the requirements of the Constitution, the statute will be given that meaning, rather than another in conflict with the Constitution." (*County of Los Angeles* v. *Legg* (1936) 5 Cal.2d 349, 353 [55 P.2d 206].) Authorities cited by the majority raised questions of proper statutory application, not statutory construction.

Although incipient, the constitutional flaw in the majority's construction is nonetheless fatal. (Cf. *People* v. *Leng* (1999) 71 Cal.App.4th 1, 10-14 [83 Cal.Rptr.2d 433] [rewriting section 667(d)(3) on basis of drafter's error results in equal protection violation as to certain defendants].) Section 667(d)(3)(B) provides that a juvenile adjudication will constitute a strike if it is listed in Welfare and Institutions Code section 707, subdivision (b), *or* is a "serious" or "violent" felony as defined elsewhere in the three strikes law. Welfare and Institutions Code section 707, subdivision (b), contains several offenses that are neither "serious" nor "violent" as so defined, including discharging a firearm into an inhabited dwelling (Welf. & Inst. Code, § 707, subd. (b)(15)), dissuading a witness or suborning perjury (*id.*, subd. (b)(19)),

manufacturing controlled substances (*id.*, subd. (b)(20)), and escaping from a juvenile hall (*id.*, subd. (b)(22)). Thus, a defendant convicted of such a crime as a juvenile is subject to the three strikes law for a broader class of prior offenses and is treated more harshly than a similarly situated defendant who suffered the conviction as an adult. No reasonable justification supports such a disparity, particularly in light of the historical resistance to treating juvenile adjudications as prior convictions.

Substituting "and" for "or" in section 667(d)(3)(B) overcomes this constitutional defect and harmonizes the remaining provisions of section 667(d)(3) with minimal judicial interference. Nor is this type of reformation without precedent. (See, e.g., *People* v. *Skinner* (1985) 39 Cal.3d 765 [217 Cal.Rptr. 685, 704 P.2d 752].) Although the Legislature articulated an overarching intent "to ensure longer prison sentences and greater punishment" for recidivists (§ 667, subd. (b)), that intent must accommodate constitutional imperatives. Courts must "presume that the Legislature intended to enact a valid statute" and "adopt an interpretation that, consistent with the statutory language and purpose, eliminates doubts as to the provision's constitutionality. [Citations.]" (*In re Kay* (1970) 1 Cal.3d 930, 942 [83 Cal.Rptr. 686, 464 P.2d 142].) I see neither logic nor sense in rejecting such an interpretation in favor of one that will eventually give rise to an equal protection violation.

Finally, despite its disclaimer (maj. opn., *ante*, at pp. 10-11), the majority interprets section 667(d)(3) contrary to the rule of lenity by which "ambiguous penal statutes are construed to favor the defendant. [Citations.]" (*People* v. *Superior Court (Romero)*, *supra*, 13 Cal.4th at p. 530.) For more than a century, this court has enforced the rule as an analogue to the requirement of proof beyond a reasonable doubt. "[T]he defendant is entitled to the benefit of every reasonable doubt, whether it arise out of a question of fact, or as to the true interpretation of words or the construction of language used in a statute . . . ." (*Ex parte Rosenheim* (1890) 83 Cal. 388, 391 [23 P. 372].) Additionally, "[s]trict construction of penal statutes protects the individual against arbitrary discretion by officials and judges and guards against usurpation of the legislative function which would result from enforcement of penalties when the legislative branch did not clearly prescribe them." (*People* v. *Overstreet* (1986) 42 Cal.3d 891, 896 [231 Cal.Rptr. 213, 726 P.2d 1288]; *People* v. *Weidert* (1985) 39 Cal.3d 836, 848 [218 Cal.Rptr. 57, 705 P.2d 380].)

Replacing "or" with "and" in paragraph (B) of section 667(d)(3) resolves the statute's uncertainty and harmonizes its remaining provisions in a manner that preserves its constitutionality. Thus, despite the need for a minor

reformation, this construction is eminently "reasonable" for purposes of invoking the rule of lenity. (*People* v. *Overstreet, supra,* 42 Cal.3d at p. 896.) Moreover, "the degree of strictness in construing penal statutes should vary in direct relation to the severity of the penalty. [Citation.]" (*People* v. *Weidert, supra,* 39 Cal.3d at p. 848.) This court's determination of which juvenile adjudications constitute prior convictions under the three strikes law will have substantial and severe consequences for those it affects, in some cases resulting in lifetime imprisonment. Following the principle of favorable construction is thus all the more compelling.