Filed 1/7/14  P. v. Green CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JOHN HENRY GREEN,<br><br>        Defendant and Appellant. | B240421<br><br>(Los Angeles County<br>Super. Ct. No. TA118150) |

        APPEAL from a judgment of the Superior Court of Los Angeles County, John T. Doyle, Judge.  Reversed with directions.

        Robert Bryzman, under appointment by the Court of Appeal, for Defendant and Appellant.

        Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, Robert C. Schneider, Deputy Attorney General, for Plaintiff and Respondent.

_____

Defendant John Green appeals his conviction of one count of unlawful possession of a firearm by a felon (former Pen. Code, § 12021, subd. (a)(1)).[1]  He contends the trial court erred in excluding testimony of a *Pitchess*[2] witness that one of the deputies conducting a search of his home had been accused of planting evidence on an arrestee, and requests that we conduct an independent review of the trial court's in camera *Pitchess* hearing to determine whether proper procedures were followed.  We find merit in defendant's contentions that the trial court abused its discretion by failing to order the disclosure of certain *Pitchess* discovery and the trial court also erred in failing to make an adequate record of the *Pitchess* hearing to permit meaningful review, and we will conditionally reverse the judgment and remand for disclosure of specified materials and a new *Pitchess* hearing.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Defendant was charged in an information with one count of possession of cocaine base for sale (Health & Saf. Code, § 11351.5), and one count of unlawful possession of a firearm by a felon (former Pen. Code, § 12021, subd. (a)(1)).  The information also alleged prior felony convictions under Penal Code section 667.5, subdivision (b) and Health and Safety Code section 11370.2, subdivision (a).

*Prosecution Case*

On April 28, 2011, at approximately 2:00 p.m., Deputy Sheriff Regan Fitzgerald was conducting surveillance of a four-plex residence at 409 North Culver Avenue in Compton with his partner Deputy Saavedra.  The deputies were preparing to serve a search warrant at the location.  Deputy Fitzgerald observed the red Toyota Corolla described in the search warrant turn into the driveway.  About five minutes later, the Toyota left with defendant driving and two female passengers.  Deputy Fitzgerald had observed defendant driving the Toyota on two other occasions during the past two weeks,

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

[2] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

2

and Deputy Fitzgerald had seen defendant enter and exit the residence twice before on other occasions.

Deputy Fitzgerald, who was in charge of the investigation, followed the Toyota and notified two other deputies in the area, Deputies Edward Retamoza and Tony Franklin, to stop the Toyota. Deputy Fitzgerald observed these deputies stop defendant's car and place him in their patrol vehicle; no other deputies were present. Deputy Fitzgerald advised the other deputies to remain with the Toyota until further notice, and returned to the police station. Deputy Fitzgerald "suited up" at the station, which consisted of putting on helmets and other equipment in preparation for entering defendant's house. This took about 15 minutes; the station is about a mile from where defendant was detained. Sergeant Shawn Jones was one of the sheriffs suiting up with Deputy Fitzgerald.

Deputy Angel Grandes had provided Deputy Fitzgerald with a set of keys to the 409 Culver residence obtained from the Toyota by Deputy Tony Franklin. Deputy Fitzgerald went to the residence and made sure it was clear of occupants, and then sent for Deputies Retamoza and Franklin to bring defendant and the Toyota to the residence. The Toyota had been detained for about 30 minutes about six blocks away. Deputy Franklin did not search the car, and did not notice anything unusual about the speakers on either side of the car.

The deputies conducted a canine search of the Toyota at 409 Culver. The police dog alerted at both the driver's side and passenger side doors. Deputies discovered the interior speaker casing was slightly open on the driver's side, and found baggies containing a white powder later determined to be cocaine base. The dog also alerted at the passenger side view mirror, and deputies recovered 22 baggies containing a white powder later determined to be cocaine base from the right side speaker area.

Sergeant Jones took a video to document the condition of the home before the search began. Deputy Fitzgerald and other deputies then entered the residence to execute the search warrant. In the kitchen deputies found a small plastic shopping bag containing

3

empty, unused plastic baggies. In a northeast bedroom was a bed and a dresser with some clothing in it. Detective Lopez summoned Deputy Fitzgerald to the room, where Deputy Lopez had found a plastic baggie containing a large chunk of suspected rock cocaine in the closet on an upper shelf. A .45-caliber firearm was in the top drawer of the dresser. The weapon had a clip with bullets in the clip. Deputies also recovered four notebooks from the drawer containing names and numerical values next to them which in Deputy Fitzgerald's opinion were "pay-and-owes" sheets showing record keeping of narcotics sales. Deputies found two electronic scales in the top drawer of the dresser.

From the dresser, deputies also recovered a California Driver's License, a personal identification card, a photocopy of a social security card, a pink slip for the Toyota, and other miscellaneous paperwork, all of which was in defendant's name addressed to him at 409 Culver. On top of the dresser was a man's leather wallet. The wallet contained several identification cards in defendant's name, and approximately $1,500 in cash.

During the search, Sergeant Jones, who was supervising the search, was "in and out" of the house during the search of the house and the car.

In Deputy Fitzgerald's opinion, the narcotics were possessed for the purposes of sale based on the quantity recovered, which was more than would be possessed for personal use; the quantities recovered from the Toyota were packaged for sale and were in equal amounts; the scales found at the house are used to measure cocaine; it is common to see a firearm kept at a location where drugs are being stored; the currency recovered was likely the proceeds of sale of narcotics; and the pay-and-owe sheets were used to keep track of narcotics sales. In addition, the baggies in the kitchen were ready to be filled and used.

*Defense Case*

Defendant testified he was homeless in April 2011. He would stay at the Crystal Park Casino or a friend's house. Defendant gambled at the Casino every day. His father owned the house at 409 Culver. During the early part of April 2011, four other people were staying at the house, but defendant's father had asked them to move. At the time of

4

defendant's arrest, his father had just left for Louisiana. Defendant was transferring his mail to his father's house, and at the time, defendant was taking care of his father's dog at the house. The Toyota belonged to his father, and defendant had agreed to put new brakes on it. The other people who had been staying at defendant's father's house had access to the car.

On the day of his arrest, defendant had his wallet on him with $1,500 in it that he had won at the casino. In addition to the two officers who stopped them, there were other officers at the scene. The officers who had initially stopped defendant searched the car and took defendant's wallet. The officers spent about 20 minutes searching the car. Defendant asserted that no one was staying in the bedroom at his father's house, and that he did not know the gun was in the dresser.

The jury convicted defendant on count 2, and deadlocked 11 to 1 in favor of finding defendant guilty on count 1. The court declared a mistrial on that count. Before sentencing, defendant pleaded no contest to count 1, a violation of Health and Safety Code section 11351.5, and the trial court found defendant guilty. The trial court sentenced defendant to five years on count 1 (consisting of the midterm of four years plus one year for the prior felony enhancement), and two years on count 2, to run concurrently with his sentence on count 1.

## DISCUSSION

Defendant argues his conviction on count 2 for unlawful possession of a firearm must be reversed because the trial court improperly excluded evidence that Sergeant Jones had planted evidence in another case, and the trial court's conclusion the evidence was not relevant is not supported by the record. Defendant also requests we conduct an independent review of his *Pitchess* motion with respect to the personnel records of the deputies involved in the search of his house. He contends he cannot determine if the trial court complied with the procedures outlined in *People v. Mooc* (2001) 26 Cal.4th 1216. He requests that if we determine the trial court erred in denying *Pitchess* discovery, we remand the matter to order disclosure.

5

# I. THE MATTER IS REMANDED FOR FURTHER *PITCHESS* DISCOVERY

## A. *Factual Background*

Before trial, defendant made *Pitchess* motions to discover the personnel files of Deputies Fitzgerald, Jones, Missakian, Saavedra, Lopez, Franklin, and Retamoza (the deputies involved in his arrest and the search of his house). Defendant specifically sought the identity of persons accusing the deputies of misconduct, the identities of persons interviewed as potential witnesseses to any misconduct, and the nature and dates and location of such misconduct. The trial court conducted an in camera *Pitchess* hearing and released to defendant certain personnel records of the deputies involved in the arrest and search of his house. The trial court did not order all records released.

During trial, the defense indicated it wished to call several *Pitchess* witnesses, including James Jones, who would testify that Sergeant Jones had planted evidence. James Jones, who did not have any narcotics in his car, was stopped by Sergeant Jones and taken to the station. Sergeant Jones "went across the parking lot to a door," returned with drugs, and stated, "This is what I found." Defense counsel argued Sergeant Jones's conduct was similar to the facts of defendant's case: Sergeant Jones was one of the officers who was inside the house, and significant evidence (the gun and a large piece of rock cocaine) was found inside the house. The court responded that Sergeant Jones was not the one who did the initial search; rather, the other officers did the initial search and Sergeant Jones was "just in and out" and was "just the supervisor." The court excluded the testimony, finding that "based on the facts that were brought out during the cross-examination and these particular facts and the involvement of Sergeant Jones, I'm going to exclude [James Jones's] testimony."

## B. *Discussion*

In *Pitchess v. Superior Court*, *supra*, 11 Cal.3d 531, the California Supreme Court "recognized that a criminal defendant may, in some circumstances, compel the discovery of evidence in the arresting law enforcement officer's personnel file that is relevant to the defendant's ability to defend against a criminal charge." (*People v. Mooc*, *supra*, 26

6

Cal.4th at p. 1219.)  As explained in *Mooc*, "[w]hen a trial court concludes a defendant's *Pitchess* motion shows good cause for discovery of relevant evidence contained in a law enforcement officer's personnel files, the custodian of the records is obligated to bring to the trial court all 'potentially relevant' documents to permit the trial court to examine them for itself.  [Citation.]  A law enforcement officer's personnel record will commonly contain many documents that would, in the normal case, be irrelevant to a *Pitchess* motion, including those describing marital status and identifying family members, employment applications, letters of recommendation, promotion records, and health records.  (See Pen. Code, § 832.8.)  Documents clearly irrelevant to a defendant's *Pitchess* request need not be presented to the trial court for in camera review.  But if the custodian has any doubt whether a particular document is relevant, he or she should present it to the trial court.  Such practice is consistent with the premise of Evidence Code sections 1043 and 1045 that the locus of decisionmaking is to be the trial court, not the prosecution or the custodian of records.  The custodian should be prepared to state in chambers and for the record what other documents (or category of documents) not presented to the court were included in the complete personnel record, and why those were deemed irrelevant or otherwise nonresponsive to the defendant's *Pitchess* motion.  A court reporter should be present to document the custodian's statements, as well as any questions the trial court may wish to ask the custodian regarding the completeness of the record.  [Citation.]" (*Mooc*, at pp. 1228–1229.)  The trial court should make a record of what documents it examined by, for example, photocopying them, listing them, or simply stating for the record what documents it examined.  (*Ibid.*)

Trial courts are vested with broad discretion when ruling on motions to discover peace officer personnel records, and we review the trial court's rulings for abuse of discretion.  (*People v. Samayoa* (1997) 15 Cal.4th 795, 827; *People v. Mooc*, *supra*, 21 Cal.4th at p. 1228.)

We have reviewed the sealed transcripts of the in camera hearing conducted.  We find the court failed to make an adequate record under *People v. Mooc*, *supra*, 21 Cal.4th

7

1216, to permit meaningful review of the materials examined at the *Pitchess* hearing. Our review of the record indicates some of the document descriptions and/or misconduct described is unclear. The trial court is directed to conduct another *Pitchess* hearing concerning the materials requested by defendant. In addition, we find that the trial court erred in failing to release to defendant the complaint against Deputies Retamoza and Franklin as described in the sealed *Pitchess* hearing transcript at page B9, lines seven through 11.

Upon issuance of the remittitur, the trial court first is to conduct another *Pitchess* hearing, make a record of those documents reviewed, and is to order disclosure of any relevant documents to defendant. The trial court is also directed to order the disclosure of the above-specified complaint against Deputies Retamoza and Franklin to defense counsel with the requisite protective order. (Evid. Code, § 1045, subd. (e); *Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1039–1047.) Defendant shall then be given a reasonable period of time to locate and interview any witnesses disclosed by the complaint and any additional *Pitchess* materials released. At the conclusion of that reasonable period of time, defendant may present evidence on this issue and make a showing of prejudice. The trial court shall then decide if these witnesses and James Jones had been called to testify, there is a reasonable probability defendant would have received a more favorable result at trial; if the trial court concludes there is a reasonable probability of a different result, then a new trial is to be ordered. If the trial court concludes there is no reasonable probability of a different result, the judgment is to be reinstated. (*People v. Guevara* (2007) 148 Cal.App.4th 62, 69–70.) As our ruling in this regard mandates reversal and defendant shall be given the opportunity to present evidence and make a showing of prejudice, we do not reach the issue of whether the trial court properly excluded James Jones's testimony at defendant's trial in this matter.

8

**DISPOSITION**

The judgment is reversed and the cause remanded with directions to the trial court to conduct another *Pitchess* hearing, to make a record of those documents reviewed, and in accord with the standards set forth in *People v. Mooc*, *supra*, 26 Cal.4th 1216 to order disclosure of any relevant documents to defendant.  The trial court is also directed to order the last complaint identified at the January 4, 2012 *Pitchess* hearing relating to Deputies Edward Retamoza and Tony Franklin be disclosed to defendant, and to permit defendant to present evidence and make a showing of prejudice.  If defendant is able to demonstrate that he was prejudiced by the denial of the discovery and the exclusion of the testimony of James Jones, the trial court must order a new trial.  If defendant is unable to show any prejudice, then the conviction and judgment are ordered reinstated.  In any instance, the trial court's rulings shall be subject to review on appeal.

NOT TO BE PUBLISHED.


JOHNSON, J.


We concur:


MALLANO, P. J.


ROTHSCHILD, J.

9