Filed 11/5/21  In re Nicholas P. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re NICHOLAS P., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>NICHOLAS P.,<br><br>    Defendant and Appellant. | A161091<br><br>(Contra Costa County<br>Super. Ct. No. J18-01060) |

Nicholas P. appeals on multiple grounds from the juvenile court's July 23, 2020 finding that he committed a probation violation and the court's related August 6, 2020 dispositional order.  Specifically, he challenges the court's finding that he violated probation by possessing drugs for which he had no prescription, an allegation to which he admitted.  We conclude the juvenile court's finding and order must be reversed for lack of a factual basis to support them.  Nicholas did not admit to conduct that violated the terms of his probation; nor did the evidence support a finding that he did.  This is because the drugs found in his possession were neither admitted nor shown to be prescription drugs.

1

Nicholas challenges certain probation conditions subsequently imposed by the juvenile court. We conclude that these challenges are moot because the court has terminated his wardship for reasons unrelated to them, and dismiss those parts of Nicholas's appeal.

## BACKGROUND

This is the third appeal by Nicholas in a matter initiated in December 2018 by the Contra Costa County District Attorney's filing of a wardship petition under Welfare and Institutions Code section 602. In the petition, the district attorney alleged that Nicholas, then 17 years old, committed felony vandalism (Pen. Code, § 594, subd. (b)(1)) and misdemeanor possession of a controlled substance (Health & Saf. Code, § 11375, subd. (b)(2).)

The juvenile court dismissed the drug possession count in the petition and found that Nicholas had committed misdemeanor vandalism. It adjudged Nicholas a ward of the court with no termination date and ordered him to reside with his parents under the supervision of the probation department. Nicholas appealed from these rulings, which we affirmed on August 25, 2020, in an unpublished opinion, *In re Nicholas P. I* (Aug. 25, 2020, A157056.)

In August 2019, the Contra Costa County District Attorney filed a supplemental wardship petition alleging that Nicholas committed assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)), assault by means likely to produce great bodily injury (*id.*, § 245, subd. (a)(4)) and felony vandalism (*id.*, § 594, subd. (b)(1).) Nicholas pleaded no contest to charges of vandalism and assault by means likely to produce great bodily injury. The court found these allegations to be true and dismissed the count alleging assault with a deadly weapon. The court committed Nicholas to the Youthful Offender

2

Treatment Program (YOTP) for a period not to exceed five years or until Nicholas reached age 21. Nicholas appealed from these rulings, which we affirmed with modifications to a probation condition prohibiting Nicholas's use of knives, Nicholas's maximum term of confinement and his custody credits. (See *In re Nicholas P. II* (Jul. 31, 2020, A158426).)

In December 2019, Nicholas filed a motion to modify the YOTP commitment order so as to order him placed in a drug treatment program. After some months of delays in considering Nicholas's motion, the probation department reported that Nicholas had made significant progress in YOTP and was nearing the completion of the institutional portion of his YOTP commitment. It recommended that upon his completion of that portion of his commitment, the court order that he advance to the aftercare phase of YOTP, reside with his parents in Brentwood, California, receive certain services and participate in an intensive outpatient substance abuse and mental health treatment program. On June 25, 2020, the juvenile court adopted the department's recommendations and ordered, among other things, that Nicholas continue as a ward of the court participating in YOTP aftercare while residing at his parents' residence.

Less than a month later, on July 20, 2020, the probation department filed a notice of probation violation regarding Nicholas. The department alleged that Nicholas was subject to the following probation order: "Obey all laws. [Nicholas] not knowingly use or possess any illegal drugs, marijuana, synthetic marijuana, drug paraphernalia, alcohol or any prescription drugs for which he does not have a current prescription from a duly licensed physician." The department further alleged that Nicholas "violated the

3

provisions of said order by the following act oromissions [*sic*]: Said minor is in possession of the drugs [*sic*] that are not prescribed to him."

In a July 23, 2020 report to the court, the probation department described Nicholas's general circumstances: "Historically, [Nicholas] has been diagnosed with ADHD, Epilepsy, Depression, Anxiety and PTSD. He has had numerous [Welfare and Institutions Code section] 5150 holds, and has a history of drug use and self-harm. He has received a plethora of services . . . ." The department also wrote: "Although [Nicholas] has multiple diagnoses, [he] has also exhibited manipulative behavior as evidenced in the YOTP institutional portion of the program and in the community. . . . [He] regularly requests changes in his medication and has admitted to not needing all the medication he is prescribed. And, in the past has stated he would stop taking them if he could be released from juvenile hall. . . . [¶] Kaiser mental health staff believes a dual diagnosis residential treatment will be most effective for [Nicholas], but only when he is ready for sobriety, is not drug seeking and his criminal escalation while using illicit substances has passed."

The probation department reported that Nicholas was prohibited from taking anything but prescribed substances. Nonetheless, the department had recently learned that Nicholas had posted photos online that indicated he was in possession of a firearm and drugs that were not prescribed for him. He had used social media to promote his sale of Xanax and "Clonazolam," which the department described as "a benzodiazepine" that was "sold online as a 'designer drug'" and a "Schedule 1 drug." In a probation search of Nicholas's residence, police did not find a firearm, but they did find a 30-milliliter bottle of Clonazolam, which had been featured in Nicholas's social media posts. Nicholas said he purchased the Clonazolam from Amazon and

4

that he could take it legally. However, Nicholas's Kaiser health professional told the department, " 'We would never approve of such drug use and all prescriptions go through our psychiatrist,' " said it appeared that Nicholas was " 'drug seeking,' " and reported that Nicholas had inquired about meeting with a psychiatrist to request new prescriptions. Nicholas was detained and placed in juvenile hall. The next day, he tested positive for methamphetamines.

The department attached documents to its report that it did not describe. The copies of these documents in the record are of inconsistent quality, but they appear to be copies of the social media posts by Nicholas that were described in the department's report and of photographs of items found in the probation search of Nicholas's residence.

At a warrant hearing in the matter, Nicholas's counsel indicated that Nicholas was "prepared to admit to the violation today as written." The court advised Nicholas of his rights and the court's likely rulings if he admitted to the violation, and questioned Nicholas about whether he was voluntarily making his admission. Counsel then stipulated to a factual basis for the admission, which Nicholas's counsel described as "the discovery provided"; upon further questioning by the court, counsel indicated these were the documents attached to the department's report. The court then engaged in the following dialogue with Nicholas:

"THE COURT: What's alleged here is that . . . you were continued as a ward of the court with conditions of probation that required you to obey all laws; not knowingly use or possess any illegal drugs, marijuana, synthetic marijuana, drug paraphernalia, alcohol, or any prescription drugs for which you don't have a current prescription issued by a duly licensed physician.

5

"It's further alleged that you violated the provisions of that order by the following act or omissions:  You were in possession of drugs that were not prescribed to you.

"As to those allegations, what's your plea?

"[NICHOLAS]:  I plead guilty.

"THE COURT:  So you admit that that's true?

"[NICHOLAS]:  I ordered stuff off of Amazon.

"THE COURT:  But you admit that these allegations are true?

"[NICHOLAS]:  Yeah.

"THE COURT:  I find all notices have been given as required by law; that Nicholas knowingly and intelligently waived his right to a hearing and freely and voluntarily admitted to the allegations.

"I find there is a factual basis for the plea as stipulated by Counsel; and, based on the plea and factual basis, I find the allegations true.

"I sustain the probation violation notice . . . ."

Nicholas filed a timely notice of appeal.

## DISCUSSION

### I.

### *The Court's Probation Violation Finding Is Without a Factual Basis.*

Nicholas argues, among other things, that the juvenile court's order must be reversed for lack of a factual basis to support it.  We agree.  The acts Nicholas admitted do not amount to a probation violation because what the department alleged, Nicholas admitted and the juvenile court found was that Nicholas was in possession of "drugs" for which he had no prescription. There was no allegation, admission or finding that he was in possession of "*prescription drugs*" for which he had no prescription.  The prosecution

6

offered no evidence that Clonazolam, the only drug alleged to have been found in Nicholas's possession, is a prescription drug. On appeal, the People concede that it is not.

Although Nicholas admitted to the department's allegation, he may raise a sufficiency of evidence argument on appeal without obtaining a certificate of probable cause from the juvenile court. (See *In re Joseph B.* (1983) 34 Cal.3d 952 [no certificate of probable cause required for juvenile to contest adjudication based on admission]; cited approvingly in *People v. Garcia* (1999) 21 Cal.4th 1, 24, *In re Damien V.* (2008) 163 Cal.App.4th 16, 21.) Further, the People do not contend that Nicholas forfeited his claim by any action or inaction in the court below.

Appellate review of a minor's lack of evidence claim is governed by the same standard applicable to adult criminal cases. Trial courts have "very broad discretion" in determining whether a probationer has violated probation and thus " 'only in a very extreme case should an appellate court interfere with the discretion of the trial court in the matter of denying or revoking probation.' " (*People v. Rodriguez* (1990) 51 Cal.3d 437, 443.) Generally, when a finding of a probation violation is challenged based upon sufficiency of the evidence, the reviewing court's role is to decide "whether, upon review of the entire record, there is substantial evidence of solid value, contradicted or uncontradicted, which will support the trial court's decision. In that regard, we give great deference to the trial court and resolve all inferences and intendments in favor of the judgment. Similarly, all conflicting evidence will be resolved in favor of the decision." (*People v. Kurey* (2001) 88 Cal.App.4th 840, 848–849.) The prosecution must prove a minor's

probation violation by a preponderance of the evidence. (*In re Eddie M.* (2003) 31 Cal.4th 480, 501; Welf. & Inst. Code, § 777, subd. (c).)

Here, the probation department's notice of probation violation states that Nicholas was prohibited from possessing "any *prescription* drugs for which he does not have a current prescription from a duly licensed physician." (Italics added.) The notice further states that he violated this condition by possessing "the drugs" for which he did not have a prescription.[1] This statement of violation omits the critical term "prescription" in describing the drugs Nicholas purportedly possessed. By doing so, it fails to state a violation of the probation condition cited in the notice. The violation, as thus described, would include possession of such "drugs" as aspirin, Robitussin cough syrup or Pepto Bismol, none of which would violate the probation condition. Therefore, Nicholas's admission to the allegation, "as written" that he possessed "drugs that were not prescribed" for him, was not an admission that he violated a probation condition.

Further, as the People acknowledge, contrary to the probation department's report to the court, the only drug found in Nicholas's possession, Clonazolam, is *not* a "Schedule 1" drug. The department's reference to "Schedule 1" presumably was to the controlled substances listed in Health and Safety Code section 11054 (entitled "Schedule 1 list of controlled substances"). (See *People v. Davis* (2013) 57 Cal.4th 353, 358 ["The Health and Safety Code lists the various substances it controls in five extensive schedules. ([Health & Saf. Code,] §§ 11054–11058.)" Clonazolam is

---

[1] The probation condition also prohibited Nicholas from possessing illegal drugs, marijuana, synthetic marijuana, drug paraphernalia and alcohol. However, the department did not allege that Nicholas violated his probation by possession of any of those items.

not among the substances listed in Health and Safety Code section 11054. Nor is it among those listed in Health and Safety Code sections 11055 through 11058. Further, the parties do not identify any evidence in the record that Clonazolam is either an illegal or a prescription drug. Indeed, the People agree on appeal that it is not a prescription drug.[2]

In short, the court's finding that Nicholas violated his probation by possessing drugs for which he had no prescription must be reversed for lack of a factual basis to support it. In light of our conclusion, we do not address the remainder of Nicholas's arguments for reversal of that finding.

## II.

### *Nicholas's Probation Condition Claims Are Moot*

The juvenile court ordered as probation conditions that Nicholas "[n]ot knowingly use or possess any knives or dangerous/deadly weapons" and follow the orders of his probation officer. Nicholas argues that two probation conditions are constitutionally overbroad and should be stricken or modified. We might consider these issues if Nicholas's wardship remained active in the juvenile court because of the possibility the court would continue to impose these conditions. Here, however, we conclude these issues are moot because Nicholas is no longer on probation or a ward of the juvenile court.

"A case is considered moot when 'the question addressed was at one time a live issue in the case,' but has been deprived of life 'because of events occurring after the judicial process was initiated.' [Citation.] . . . The pivotal

---

[2] Possession of Schedule I and Schedule II substances (those listed in Health and Safety Code sections 11054 and 11055) is a criminal offense, and possession of Schedule III, IV and V substances (sections 11056 through 11058) without a prescription is a criminal offense. (Health & Saf. Code, § 11350, subd. (a).)

9

question in determining if a case is moot is . . . whether the court can grant [the plaintiff] any effectual relief . . . . [Citations.] . . . If events have made such relief impracticable, the controversy has become 'overripe' and is therefore moot." (*Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1574; see also *In re N.S.* (2016) 245 Cal.App.4th 53, 60 ["[T]he critical factor in considering whether a dependency appeal is moot is whether the appellate court can provide any effective relief if it finds reversible error"].) "However, a reviewing court may exercise its inherent discretion to resolve an issue rendered moot by subsequent events if the question to be decided is of continuing public importance and is a question capable of repetition, yet evading review." (*In re Yvonne W.* (2008) 165 Cal.App.4th 1394, 1404.)

On May 18, 2021, when Nicholas was 19 years old, the court terminated his probation as unsuccessful and vacated his wardship. The record as augmented by the parties indicates the court's May 18, 2021 rulings were not related to the probation conditions Nicholas challenges in this appeal, but instead resulted from Nicholas's persistent substance abuse. Because Nicholas is no longer on probation, he is no longer subject to the probation conditions he challenges. Therefore, striking or modifying them would grant Nicholas no practical relief. Further, Nicholas's claims do not present issues of continuing public importance that would consistently evade review if left unresolved and require that we exercising our discretion to overlook mootness.

In short, Nicholas's challenges to these two probation conditions are moot.

## DISPOSITION

Nicholas's claims regarding his probation conditions are dismissed as moot. The juvenile court's July 23, 2020 finding that Nicholas committed a probation violation and its related August 6, 2020 dispositional order are reversed.

11

_____
Stewart, J.

We concur:


_____
Kline, P. J.


_____
Miller, J.


*In re Nicholas P.* (A161091)

12