# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,
Plaintiff and Respondent,
v.
KEJUAN DARCELL CLARK,
Defendant and Appellant.

S275746

Fourth Appellate District, Division Two
E075532

Riverside County Superior Court
RIF1503800

---

February 22, 2024

Justice Kruger authored the opinion of the Court, in which Chief Justice Guerrero and Justices Corrigan, Liu, Groban, Jenkins, and Evans concurred.

---

PEOPLE v. CLARK

S275746

Opinion of the Court by Kruger, J.

This is one in a series of cases concerning the gang sentencing provisions in Penal Code section 186.22 (section 186.22), as they were recently amended by Assembly Bill No. 333 (2021–2022 Reg. Sess.) (Assembly Bill 333), which was signed into law in 2021 (see Stats. 2021, ch. 699, §3).

The question in this case concerns Assembly Bill 333's changes to the requirements for proving the predicate offenses constituting a "pattern of criminal gang activity" — one of the requirements for proving the existence of a "criminal street gang."  (§ 186.22, subds. (e), (f).)  As amended by Assembly Bill 333, section 186.22 defines the term " 'criminal street gang' " to mean "an ongoing, organized association or group of three or more persons, . . . whose members *collectively* engage in, or have engaged in, a pattern of criminal gang activity."  (§ 186.22, subd. (f), italics added (section 186.22(f)).)   The amended statute defines the " 'pattern of criminal gang activity,' " in turn, to mean, in pertinent part, the commission of (or other specified forms of involvement in) two offenses enumerated in the statute, "provided . . . [they] were committed *on separate occasions or by two or more members*" of the gang and the offenses provided a benefit to the gang that is more than reputational.  (§ 186.22, subd. (e)(1), italics added (section 186.22(e)(1)).)

The Courts of Appeal have divided over whether, under the statute as amended by Assembly Bill 333, the statutory reference to "collective[]" engagement in a pattern of criminal

1

gang activity is properly read to mean that each of the two predicate offenses must be committed in concert with other gang members and cannot be committed by individual gang members acting alone. We conclude that this reading is refuted by the plain language of the statute, which says that the predicate offenses must be "committed on separate occasions *or* by two or more members." (§ 186.22(e)(1), italics added.) We go on, however, to consider what the collective engagement requirement does mean. Reading the statutory text in light of the Legislature's purpose of more narrowly targeting the threats posed by organized group activity, we hold that collective engagement requires a nexus between the individual predicate offenses and the gang as an organized, collective enterprise. This organizational nexus requirement is satisfied by showing a connection between the predicate offenses and the organizational structure, primary activities, or common goals and principles of the gang. Because the Court of Appeal did not account for this feature of the statute, we reverse and remand for further proceedings.

## I.

Defendant Kejuan Darcell Clark was charged with several offenses stemming from a July 2015 incident in which he and others entered a woman's home without permission. The prosecution alleged that Clark proceeded to the woman's bedroom, where he raped her, then stole her laptop computer and phone. (*People v. Clark* (2022) 81 Cal.App.5th 133, 137–141 (*Clark*).)

At the time, Clark was a member of the Northside Parkland street gang, a subset of the Sex Cash Money street gang. (*Clark, supra,* 81 Cal.App.5th at p. 138.) In addition to

charging the substantive offenses, the prosecution alleged various gang enhancements under section 186.22, subdivision (b). To establish the gang enhancements, the prosecution introduced the testimony of a gang expert. The gang expert testified that the primary activities of the gang included a variety of criminal offenses, including robbery and burglary. The expert described Sex Cash Money as a loosely controlled organization. The gang did not have a leader and formal structure; instead, there were "big homies" in the gang who were older and looked up to by other members. The expert was not aware of any expectation for Sex Cash Money members to give proceeds from a robbery or burglary to the gang, unlike some gangs that had specific requirements to "pay upstairs" after such crimes. Much of the expert's testimony was devoted to establishing that the individuals with Clark on the night of the charged burglary were also gang members and that the charged burglary would benefit the gang.

To prove the requisite pattern of criminal gang activity by the gang, the prosecution introduced certified convictions showing that another gang member, Damon Ridgeway, had pleaded guilty to robbery in 2014 and to residential burglary in 2009, and that Clark had pleaded guilty to attempted burglary in 2014. The expert testified that those offenses, and the conviction or pleas of Clark's codefendants in the charged burglary, showed a pattern of criminal activity by Sex Cash Money. The testimony did not address whether the predicate offenses, as distinct from the charged burglary, benefited the gang, or how they were otherwise related to the gang.

The jury convicted Clark of rape (Pen. Code, § 261, subd. (a)(2)), forced oral copulation (*id.*, § 287, subd. (c)(2)(A)), false imprisonment (*id.*, § 236), first degree burglary (*id.*, §§ 459,

460, subd. (a)), and robbery in concert inside an inhabited dwelling (*id.*, §§ 211, 213, subd. (a)(1)(A)). The jury found the gang enhancement allegations true as to the burglary, robbery, and false imprisonment counts. (*Clark, supra,* 81 Cal.App.5th at pp. 135–136; see § 186.22, subd. (b)(1)(C).) Clark was sentenced to 20 years plus an indeterminate term of 90 years to life, including a 10-year term for the gang enhancement.

Clark appealed his convictions and sentence. While his appeal was pending, the Assembly Bill 333 amendments to section 186.22 took effect. Clark argued, and the People did not dispute, that the amendments applied retroactively to cases on direct review. (*Clark, supra,* 81 Cal.App.5th at p. 144, fn. 11.) Invoking the collective engagement provision of the new law, Clark asserted that the evidence of predicate offenses at trial was insufficient to support the gang enhancements because the evidence showed only the commission of offenses by individual gang members. Clark argued that the statute, as amended by Assembly Bill 333, required two or more gang members, acting in concert, to commit each of the two required predicate offenses. (*Clark,* at pp. 143–144.)

The Court of Appeal rejected this argument as inconsistent with the definition of a " 'pattern of criminal gang activity' " in section 186.22(e)(1), which requires that the two predicate offenses "were committed on separate occasions or by two or more members." The court reasoned that, under the plain language of the statute, "there are two options for establishing the requisite pattern [of predicate offenses]: (1) prove two different gang members separately committed crimes on two occasions; or (2) prove two different gang members committed a crime together on a single occasion." (*Clark, supra,* 81 Cal.App.5th at p. 144.) Here, the evidence was sufficient

4

because it showed that "two *different* gang members separately committed crimes on two occasions." (*Ibid.*, italics added.)

The Court of Appeal expressly disagreed with *People v. Delgado* (2022) 74 Cal.App.5th 1067, which held that collective engagement under section 186.22(e)(1) requires proof that each of the predicate offenses was committed by at least two gang members acting in concert, and with *People v. Lopez* (2021) 73 Cal.App.5th 327, 345, which had reversed gang enhancements where "[n]o evidence was introduced at trial to establish that the crimes committed by [individual gang members] constitute collective criminal activity."

We granted review to address the issue.

## II.

### A.

The Legislature first enacted section 186.22 in 1988 as part of the California Street Terrorism Enforcement and Prevention Act (Pen. Code, § 186.20 et seq.), also known as the STEP Act. (See Stats. 1988, ch. 1242, § 1, pp. 4127–4130.) Subdivision (b) of section 186.22 prescribes "sentence enhancements or alternate penalties of varying length for 'any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members.' (§ 186.22(b)(1); see *id.*, subd. (b)(4).)" (*People v. Renteria* (2022) 13 Cal.5th 951, 962.) The STEP Act also defines a substantive offense punishing active participation in a criminal street gang. (§ 186.22, subd. (a).)

As originally enacted, the statute defined a " 'criminal street gang' " as "any ongoing association of three or more

persons that shares a common name or common identifying sign or symbol; has as one of its 'primary activities' the commission of specified criminal offenses; and engages through its members in a 'pattern of criminal gang activity.' [Citation.] Under the [STEP Act], 'pattern of criminal gang activity' means that gang members have, within a certain time frame, committed or attempted to commit 'two or more' of specified criminal offenses (so-called 'predicate offenses').” (*People v. Gardeley* (1996) 14 Cal.4th 605, 610, italics omitted, citing former § 186.22.) The original statute specified seven offenses, such as robbery, arson, and witness intimidation, that made up the targeted “primary activities” of a gang as well as the predicate offenses of the gang's members. (§ 186.22, former subd. (c); see also *id.*, former subd. (d).)

The Legislature substantially amended the STEP Act in Assembly Bill 333, also known as the STEP Forward Act of 2021. (Stats. 2021, ch. 699, § 1.) The new legislation, which became effective on January 1, 2022, made several changes to the definition of section 186.22 gang enhancements. “First, it narrowed the definition of a 'criminal street gang' to require that any gang be an 'ongoing, *organized* association or group of three or more persons.' (§ 186.22, subd. (f), italics added.) Second, whereas section 186.22, former subdivision (f) required only that a gang's members 'individually *or* collectively engage in' a pattern of criminal activity in order to constitute a 'criminal street gang,' Assembly Bill 333 requires that any such pattern have been '*collectively* engage[d] in' by members of the gang. (§ 186.22, subd. (f), italics added.) Third, Assembly Bill 333 also narrowed the definition of a 'pattern of criminal activity' by requiring that (1) the last offense used to show a pattern of criminal gang activity occurred within three years of the date

that the currently charged offense is alleged to have been committed; (2) the offenses were committed by two or more gang 'members,' as opposed to just 'persons'; (3) the offenses commonly benefitted a criminal street gang; and (4) the offenses establishing a pattern of gang activity must be ones other than the currently charged offense. (§ 186.22, subd. (e)(1), (2).) Fourth, Assembly Bill 333 narrowed what it means for an offense to have commonly benefitted a street gang, requiring that any 'common benefit' be 'more than reputational.' (§ 186.22, subd. (g).)" (*People v. Tran* (2022) 13 Cal.5th 1169, 1206 (*Tran*).) And finally, Assembly Bill 333 omitted certain nonviolent offenses from the list of offenses that could make up a gang's primary activities or form the requisite pattern of criminal gang activity, reducing the list of offenses from 33 to 26. (Compare § 186.22, former subd. (e)(1)–(33), as amended by Stats. 2017, ch. 561, § 178 with § 186.22(e)(1)(A)–(Z).)[1]

---

[1]    As amended, the definition of a " 'criminal street gang' " now reads in full: "As used in this chapter, 'criminal street gang' means an ongoing, organized association or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more of the criminal acts enumerated in subdivision (e), having a common name or common identifying sign or symbol, and whose members collectively engage in, or have engaged in, a pattern of criminal gang activity." (§ 186.22(f).)

   The full definition of a " 'pattern of criminal gang activity,' " as amended, now reads: "As used in this chapter, 'pattern of criminal gang activity' means the commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of, two or more of the following offenses, provided at least one of these offenses occurred after the effective date of this chapter, and the last of

In *Tran*, this court considered a number of questions concerning Assembly Bill 333's application to cases tried before its effective date. *Tran* held, in line with a substantial body of appellate authority, that Assembly Bill 333's amendments to the definition of section 186.22 gang enhancements are retroactively applicable to cases on direct review. (*Tran*, *supra*, 13 Cal.5th at p. 1207.) *Tran* also considered a question similar to the one presented in this case, concerning Assembly Bill 333's application to predicate offenses involving individual gang members, but we did not have occasion to decide it. Instead, accepting the Attorney General's confession of error, we reversed the gang enhancement without addressing whether the statute allows for the admission of predicate offenses committed by lone gang members. We explained that "because the jury was not presented with any discernible theory as to how [individual gang] members 'collectively engage[d] in' the[] predicate crimes," "[w]e need not resolve the contours of Assembly Bill 333's collective engagement requirement." (*Tran*, at p. 1207.) We now turn to that task.

**B.**

We begin by addressing the narrow conflict in the Courts of Appeal about the scope of Assembly Bill 333's changes to section 186.22's predicate offense requirement. The conflict centers on the interaction between the two definitional

those offenses occurred within three years of the prior offense and within three years of the date the current offense is alleged to have been committed, the offenses were committed on separate occasions or by two or more members, the offenses commonly benefited a criminal street gang, and the common benefit from the offenses is more than reputational." (§ 186.22(e)(1).)

provisions pertinent to the requirement. First, there is the definition of the term " 'criminal street gang' " to mean, as relevant here, "an ongoing, organized association or group of three or more persons, . . . whose members *collectively* engage in, or have engaged in, a pattern of criminal gang activity." (§ 186.22(f), italics added.) The use of the word "collectively" represents a change to the former law, which had required that gang members "individually or collectively engage in" a pattern of criminal gang activity (§ 186.22, former subd. (f)). Then, second, there is the nested definition of " 'pattern of criminal gang activity,' " which states that the requisite pattern is established by commission of two enumerated offenses, so long as they "were committed on separate occasions or by two or more members" of the gang and the offenses provided a common benefit to the gang that is more than reputational. (§ 186.22(e)(1).) In the "pattern" definition, the requirement that the predicate offenses provide a common benefit is new, but the "on separate occasions or by two or more members" language is largely the same as in the original STEP Act; Assembly Bill 333 replaced "two or more persons" with "two or more *members*" but otherwise preserved the language of the original.

In an effort to give effect to the amended statute's collective engagement language, the Court of Appeal in *Delgado* concluded that each predicate offense must be committed by two or more gang members. (*People v. Delgado, supra,* 74 Cal.App.5th at p. 1088.) The court relied on the "commonsense" meaning of the word " 'collectively,' " as well as the history behind its deployment in Assembly Bill 333. (*Delgado*, at p. 1088.) The court explained that before Assembly Bill 333, the predicate offense requirement could be established "by proving two gang members individually committed the predicate

9

offenses on two separate occasions." (*Delgado*, at p. 1089, citing § 186.22, former subd. (e).) A reading that would instead require proof that at least two gang members committed each predicate offense, the Court of Appeal reasoned, was consistent with "the Legislature's intent to dramatically limit the scope of the gang enhancement." (*Delgado*, at p. 1089.)

The obvious difficulty with this reading is that it fails to give meaning to the language of section 186.22(e)(1), which states that the requisite pattern of criminal activity is established by two offenses committed "on separate occasions *or* by two or more members." (§ 186.22(e)(1), italics added.) The *Delgado* court never attempted to explain how its approach could be squared with this provision, and we do not believe it can. By contrasting offenses committed on "separate occasions" with those committed by "two or more members," the language of section 186.22(e)(1) indicates that only the second alternative requires the participation of more than one gang member. This is the most straightforward reading of the language of the statute. It is also how this court understood the same language when asked to interpret it some 25 years ago. (*People v. Loeun* (1997) 17 Cal.4th 1, 9 (*Loeun*) [the "Legislature's use of the disjunctive 'or' in [§ 186.22, former subd. (e)] indicates an intent to designate alternative ways of satisfying the statutory requirements"]; see *People v. Gardeley*, *supra*, 14 Cal.4th at p. 624 [crime committed by an individual gang member constituted a predicate offense under § 186.22, former subd. (e)].) The Legislature preserved this language in Assembly Bill 333, even as it changed the language of section 186.22(e)(1) in other respects. (See *Tran*, *supra*, 13 Cal.5th at p. 1206 [detailing changes].) We presume the Legislature understood that the effect of retaining the language intact would be to

preserve the long-settled understanding of its meaning. (See, e.g., *Tuolumne Jobs & Small Business Alliance v. Superior Court* (2014) 59 Cal.4th 1029, 1039 [" 'The Legislature is presumed to be aware of all laws in existence when it passes or amends a statute.' "].)[2]

Clark argues that there now exists tension between section 186.22(e)(1) and section 186.22(f) that pre-Assembly Bill 333 cases such as *Loeun* did not, and could not have, addressed. But if there is indeed tension, the approach taken in *Delgado* does not resolve it. Rather than harmonize the two provisions, in its effort to give meaning to section 186.22(f)'s reference to

---

[2]    In *Loeun*, we interpreted the statute to mean that the prosecution could rely on the substantive offense charged in the case as one of the predicate offenses establishing a pattern of criminal gang activity. (*Loeun*, *supra*, 17 Cal.4th at p. 5.) Assembly Bill 333 overturned this aspect of *Loeun* by expressly requiring proof of two predicate offenses other than the charged offense. (Stats. 2021, ch. 699, § 3, adding § 186.22, subd. (e)(2).) But Assembly Bill 333 left untouched the disjunctive formulation of the requirement in section 186.22, subdivision (e)(1) that predicate offenses be committed "on separate occasions *or* by two or more" members. (Stats. 2021, ch. 699, § 3, italics added.)

Assembly Bill 333 also retained in the statutory list of qualifying predicate offenses certain crimes that are ordinarily committed by individuals, such as carrying a concealed firearm and other similar firearm offenses (e.g., § 186.22, subd. (e)(1)(Y); see also, e.g., *id*., subd. (e)(1)(U), (X)), and rape as defined in Penal Code section 261 (*id*., § 186.22, subd. (e)(1)(L)), rather than the offense of rape in concert with another person (*id*., § 264.1, subd. (a)). The Legislature's retention of crimes ordinarily committed by persons acting alone is an additional indication that predicate offenses can be committed by individual gang members and do not have to be committed by multiple gang members acting in concert.

collective engagement, *Delgado* effectively rewrites section 186.22(e)(1) to give it a meaning at odds with its text — that predicate offenses may be "committed on separate occasions *by two or more members*, or by two or more members." The result of the insertion is not just to create an awkward redundancy, but to change the meaning of the sentence by effectively nullifying the disjunctive clause "*or* by two or more members." (See *People v. Garcia* (1999) 21 Cal.4th 1, 10 [a court should not "disregard or rewrite some portion of the statute" but should "harmonize and give effect to all its provisions"].)

The unlikely reading *Delgado* gives to section 186.22(f)'s collective engagement language is not compelled by the ordinary, commonsense meaning of the phrase. The phrase "collectively engage" is not always a synonym for "commit in concert." It *can* have that meaning. But the word "collectively" is just as often used to refer to distinctively individual acts that, considered in the aggregate, form a general pattern. (Webster's 3d New Internat. Dict. (2002) p. 444 ["collective" denotes "a number of persons or things considered as constituting one group" or "aggregated"]; see, e.g., *People v. Miranda-Guerrero* (2022) 14 Cal.5th 1, 12 [multiple interrogations "collectively" spanned a three-day period]; *People v. Dalton* (2019) 7 Cal.5th 166, 262 [various instructions "collectively" conveyed the appropriate concept].) Nor is it clear that the collective engagement language, as it is used in the context of section 186.22(f), was meant to refer to the "collective[]" engagement of just two gang members. The language appears in a general definition of "'criminal street gang,'" following a list of attributes pertaining to the gang as a whole: its size, its primary activities, its "common name or common identifying sign or symbol." (§ 186.22(f).) In that context, the reference to "whose

*members* collectively engage in, or have engaged in, a pattern of criminal gang activity" (*ibid.*, italics added) appears more likely intended to refer to at least some measure of engagement by the gang's membership as a whole, rather than referring just to the "collective[]" actions of a couple of individual members.

Nor is the *Delgado* court's reading compelled by consideration of the functional role the collective engagement language plays in the statutory scheme. The law recognizes that offenses committed by lone actors can be gang-related. (E.g., *People v. Renteria, supra,* 13 Cal.5th at p. 964.) The law also recognizes that criminal street gangs typically involve "a network of participants with different roles and varying kinds of involvement." (*People v. Johnson* (2013) 57 Cal.4th 250, 266.) As the Attorney General here notes, an individual gang member could be responsible for collecting "taxes" from local drug dealers on behalf of the gang, for violently assaulting those who do not pay, or even for killing members of rival gangs. Such offenses, though committed by individual gang members, would seem to present no less a concern about broader patterns of criminal gang activity — that is, collective engagement in crime — than if they had been committed by two gang members acting together.[3] Certainly the Legislature that enacted Assembly Bill

---

[3]    Amicus curiae Peace and Justice Law Center argues that the reference to predicate offenses committed "on separate occasions or by two or more members" (§ 186.22(e)(1)) contains a drafting error, and that the Legislature intended to replace the preexisting "or" with "and." We have acknowledged that an "inadvertent" mix-up of " 'or' " and " 'and' " "is a familiar example of a drafting error which may properly be rectified by judicial construction." (*People v. Skinner* (1985) 39 Cal.3d 765, 775.) But "[a]lthough we may properly decide upon such a

333 could plausibly so conclude. That it left intact the disjunctive reference to offenses committed "on separate occasions *or* by two or more members" (§ 186.22(e)(1), italics added), suggests it did just that.

## C.

The question, however, remains: If the "collectively engage" language in section 186.22(f) does not mean that each predicate offense must have been committed by at least two gang members acting in concert, then what does it mean? The language does not point to clear answers. In briefing the issue in this court, the Attorney General has offered one possibility. He suggests that by eliminating the reference to a gang's members "individually" engaging in a pattern of criminal gang activity and instead focusing solely on "collective[]" engagement, the Legislature was aligning the relevant portion of the definition of a criminal street gang in section 186.22(f) with other statutory changes, primarily, the new requirement that the prosecution prove that each predicate offense conferred a "common benefit" to the gang (§ 186.22(e)(1)).[4]

---

construction or reformation when compelled by necessity and supported by firm evidence of the drafters' true intent [citation], we should not do so when the statute is reasonably susceptible to an interpretation that harmonizes all its parts without disregarding or altering any of them." (*People v. Garcia* (1999) 21 Cal.4th 1, 6.) Here, the amendments can be harmonized without altering a term, and there is ample reason to believe the Legislature's use of "or" was deliberate rather than inadvertent. We therefore do not second guess the Legislature's choice to leave the relevant conjunction in place.

[4] The Court of Appeal offered another alternative: that, to be suggestive of collective engagement by " 'members' " of the

Under the amended version of the statute, each predicate offense must have conferred a "common benefit," where the common benefit is "more than reputational." (§ 186.22(e)(1).) "Examples of a common benefit that are [*sic*] more than reputational may include, but are not limited to, financial gain or motivation, retaliation, targeting a perceived or actual gang rival, or intimidation or silencing of a potential current or previous witness or informant." (*Id.*, subd. (g).) The Attorney General notes that this change evidences Assembly Bill 333's "broader focus on viewing a criminal street gang as an organized, collective entity" rather than a loose grouping of individuals who may commit crimes for their own purposes. In the briefing, the Attorney General has argued that it is consistent with that focus to regard proof of a common benefit from the predicate offenses as sufficient to establish collective engagement in a pattern of criminal gang activity. The Attorney General offers, by way of example, a scenario involving offenses committed by three individual gang members: one who sells drugs for the gang, a second who murders a rival drug dealer, and a third who takes possession of the murder weapon to make it difficult to identify the perpetrator of the murder. The

---

gang, predicate offenses committed on different occasions must be committed by different gang members. (*Clark, supra*, 81 Cal.App.5th at p. 144.) The Attorney General resists that alternative interpretation but notes that we need not decide the issue here because the two predicate offenses in this case were in fact committed by different gang members. We reserve for another case the question whether the use of the plural "members" means that the predicate offenses must be committed by at least two different gang members, and whether or not those gang members may include the defendant. (§ 186.22(f).)

offenses, though committed by individual gang members, all confer a common benefit to the gang as a whole. And in so doing, the Attorney General argues, they also demonstrate the gang's collective engagement.

This view — under which the collective engagement language merely reinforces the new requirement that the predicate offenses confer a common benefit on the gang, without adding anything to it — is not entirely implausible. But neither is it obviously correct. It is certainly reasonable to conclude that the collective engagement and common benefit changes are related, insofar as both changes represent a shift in emphasis toward the attributes that connect individual criminal acts to the larger gang as a collective enterprise. At the same time, there is at least a conceptual difference between a requirement that members of a gang collectively engage in the pattern of criminal activity shown by predicate offenses, on the one hand, and a requirement that each predicate offense commonly benefited the gang, on the other. A group of people can benefit from the acts of another without having collectively engaged in them. A crime may achieve a benefit for the entire gang, and yet say little about collective engagement. An enterprising gang member, for example, may take it upon himself to perform a one-time act of embezzlement from his workplace that generates proceeds enjoyed by the gang, though the gang is neither aware of nor condones the gang member's brand of freelancing.

The Attorney General's proffered example does suggest collective engagement in the predicate offenses, but there is more at work in the example than just a common benefit. As the Attorney General himself describes it, the example is designed to show how "the term 'collectively' in [section 186.22](f) is most naturally read to comport with the common

structure of gangs and account for individual members' various roles in committing crimes for the common benefit of the gang, viewed as a collective enterprise." The concepts the Attorney General invokes here — concerning the gang's organizational structure; the roles individual members play in carrying out its primary activities; and consideration of the gang as a collective enterprise — are all concepts that may overlap, but are not always coextensive with the question whether individual members' offenses conferred a common benefit on the gang.

## D.

Ultimately, to discern the meaning of the collective engagement language, we examine the legislative history for the light it may shed. (See *Walker v. Superior Court* (2021) 12 Cal.5th 177, 194 ["If the relevant statutory language is ambiguous, we look to appropriate extrinsic sources, including the legislative history, for further insights"].)

Nothing in the legislative history speaks specifically to the Legislature's intentions in eliminating the reference to a gang defined by members who "individually" engage in a pattern of criminal gang activity (§ 186.22, former subd. (f)), and leaving the requirement that members "collectively" engage in such a pattern (§ 186.22(f)).[5] What the history does indicate, however,

---

[5] One senate analysis does describe the bill as revising the law to require, among other things, that "the offenses were committed by *two or more members*." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 333 (2021–2022 Reg. Sess.) as amended July 13, 2021, p. 4, italics added.) But as we have already explained, the actual language of the statute is to the contrary, and no similar description of section 186.22(f) appears in any of the other available legislative

is that the collective engagement language in section 186.22(f) was intended to have independent significance, separate and apart from the requirements for proving predicate offenses in section 186.22(e), such as the requirement to prove a common benefit to the gang.

Legislative analyses emphasized that the bill would redefine both the term " 'criminal street gang' " (§ 186.22(f)) and the term " 'pattern of criminal gang activity' " (§ 186.22(e)). (See Assem. Com. on Public Safety, Analysis of Assem. Bill No. 333 (2021–2022 Reg. Sess.) as amended Mar. 30, 2021, p. 1; Sen. Com. on Public Safety, Analysis of Assem. Bill No. 333, *supra*, as amended May 28, 2021, p. 2; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 333, *supra*, as amended July 13, 2021, p. 4.) And analyses not only listed the new proof that would be necessary to establish the predicate offenses — that they were committed by gang members, benefited the gang, and occurred within three years of the charged offense — but also separately described the requirements contained in section 186.22(f). (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 333, *supra*, as amended Mar. 30, 2021, p. 8 [listing the requirements for proving predicate offenses under section 186.22(e) and separately noting that the revised section 186.22(f) "would also require the prosecution to prove the members collectively,

_____

history documents. (See, e.g., Sen. Com. on Appropriations, Analysis of Assem. Bill No. 333 (2021–2022 Reg. Sess.) as amended July 13, 2021, p. 2; Sen. Com. on Public Safety, Analysis of Assem. Bill No. 333 (2021–2022 Reg. Sess.) as amended May 28, 2021, p. 4.) We thus place no weight on what appears to be a stray misdescription of the bill in a single line of a single document.

rather than individually, engage in, or have engaged in a 'pattern of criminal gang activity' "]; see also Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 333, *supra*, as amended July 13, 2021, p. 4 [same, regarding the final version of the bill].)  If the Legislature had intended changes to section 186.22(f) to simply reflect and conform to the requirements of section 186.22(e)(1), as the Attorney General has argued, it seems unlikely that these descriptions of the bill would have listed and described collective engagement as a change with its own distinct meaning.

To discern that meaning, we turn to what the history reveals, more generally, about the Legislature's purposes in enacting Assembly Bill 333.  The overarching purpose of the original STEP Act, as articulated in the declaration accompanying its initial enactment in 1988, is "to seek the eradication of criminal activity by street gangs by focusing upon patterns of criminal gang activity and upon the organized nature of street gangs, which together, are the chief source of terror created by street gangs."  (Pen. Code, § 186.21.) Committee reports further explained that the STEP Act was meant to target criminal street gangs the sponsors characterized as "large scale big business and large-scale crime in California."  (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 2013 (1987–1988 Reg. Sess.) June 8, 1987, p. 4; see also Assem. Com. on Public Safety, Analysis of Sen. Bill No. 1555 (1987–1988 Reg. Sess.) as amended June 23, 1987, p. 4 [same].)  To effectuate this purpose, the Legislature crafted a set of requirements for proving the existence of a pattern of criminal gang activity based on the commission of predicate offenses.

When the Legislature undertook to revise the STEP Act in 2021, it expressed concern that the Act had strayed from this

original purpose, with a devastating impact on California communities. Although the STEP Act "was originally enacted to target crimes committed by violent, organized criminal street gangs," and was only meant to apply " 'in the most egregious cases where a pattern of criminal gang activity was clearly shown,' " the STEP Act "has been continuously expanded through legislative amendments and court rulings." (Assem. Bill 333, § 2(g).) The result, the Legislature found, was that "[c]urrent gang enhancement statutes criminalize entire neighborhoods historically impacted by poverty, racial inequality, and mass incarceration as they punish people based on their cultural identity, who they know, and where they live." (*Id.*, § 2(a).) Groups of residents in certain neighborhoods "are often mischaracterized as gangs despite their lack of basic organizational requirements such as leadership, meetings, hierarchical decisionmaking, and a clear distinction between members and nonmembers." (*Id.*, § 2(d)(8).)

Through Assembly Bill 333, the Legislature sought to narrow the statute's focus to align with its original intent: to focus on the threats posed by organized criminal street gangs. (See, e.g., Assem. Com. on Public Safety, Analysis of Assem. Bill No. 333, *supra*, as amended Mar. 30, 2021, pp. 7–8 [Assem. Bill 333 would "redefine the term 'criminal street gang' " to reflect a recommendation from the committee on revision of the Penal Code to focus the definition on "organized, violent enterprises"].) The Legislature made several changes toward this end, beginning with its revision of the term " 'criminal street gang' " to mean "an ongoing, *organized* association or group of three or more persons . . . whose members *collectively* engage" in a pattern of criminal gang activity. (§ 186.22(f), italics added.)

While the legislative history may not clearly indicate the

intended meaning of the Legislature's switch to a requirement of collective engagement in a pattern of criminal gang activity, it is clear what the Legislature meant this change to accomplish. The change was made in service of the Legislature's broader goal of differentiating between the threat posed by organized groups collectively engaged in criminal activity, versus the threat posed by individual, loosely connected persons who happen to commit crimes. That differentiation, we now conclude, requires a showing that links the two predicate offenses to the gang as an organized, collective enterprise.[6]

The Attorney General's argument proceeds from this same premise. But, as the Attorney General ultimately conceded at oral argument, a singular focus on the common benefit requirement in section 186.22(e) does not prove the existence of a criminal street gang as defined in section 186.22(f). The fact

---

[6] The Legislature initially added, but then dropped, a requirement that the predicate offenses "were committed for the benefit of, at the direction of, or in association with, the criminal street gang, with the specific intent to promote, further, or assist in criminal conduct by members of the criminal street gang at issue." (Legis. Counsel's Dig., Assem. Bill No. 333 (2021–2022 Reg. Sess.), as amended Mar. 24, 2021.) That provision would have required, with respect to predicate offenses, the same gang-related and specific intent showings now required of the charged offense, including an inquiry into the mens rea of the typically absent third party gang member who allegedly committed the offense. (See § 186.22, subd. (b)(1), (4); see also *People v. Renteria, supra,* 13 Cal.5th at p. 965 [describing the showing these provisions require with respect to the charged offense].) That the Legislature discarded this more onerous requirement does not affect our conclusion that the language the Legislature did enact requires that some connection be shown between the predicate offenses and the gang as a collective enterprise.

that a crime may have commonly benefited a gang certainly tells us something about the relationship between the perpetrator and the gang, but it does not necessarily tell us how the gang itself can be said to have "collectively engaged" in a pattern of crime. The Attorney General acknowledged that after proving that a predicate offense conferred a common benefit on the gang, it is still necessary to show that the offense reflected an "organized effort" by the criminal street gang. The Legislature's reference to collective engagement thus calls for an inquiry not just into how the predicate offenses benefited the gang, but also how the gang works together *as a gang*. It calls for a showing of a connection, or nexus, between an offense committed by one or more gang members and the organization as a whole.

This organizational nexus may be shown by evidence linking the predicate offenses to the gang's organizational structure, meaning its manner of governance; its primary activities; or its common goals and principles. By reference to these elements of a gang's affairs and operations, we do not mean to overstate the degree of formality required. As we have recognized, some gangs have a " 'loose' " structure (*People v. Ware* (2022) 14 Cal.5th 151, 170), while others are "highly ordered and disciplined," with a "well-defined" hierarchy (*People v. Masters* (2016) 62 Cal.4th 1019, 1027). Similarly, some gangs may have loosely defined goals and principles, while others may have clearly defined missions. Given this variability, collective engagement will be established in different ways.

In some cases, for example, there might be evidence of a direct order from the gang to commit specific crimes. (E.g., *People v. Lewis* (2021) 11 Cal.5th 952, 958 [the murder would have been agreed on at a meeting called by the gang's " ' "shot caller" ' "]; *In re Masters* (2019) 7 Cal.5th 1054, 1063 [a certain

attack "would normally have been ordered only by the highest echelon of a gang's leadership"].) Alternatively, evidence might show a more general, well-understood expectation that members must engage in certain types of offenses. (E.g., *People v. Elizalde* (2015) 61 Cal.4th 523, 528 [junior members received a general order to attack rivals to support the gang and earn their status].) In other cases, collective engagement might be shown by demonstrating that the offenses are reflective of the primary activities of the gang, or else adhere to a common goal or plan characteristic of the gang in question. (E.g., *People v. Johnson*, *supra*, 57 Cal.4th at p. 256 [members played different roles in carrying out the gang's activities, either selling drugs, patrolling the gang's territory, or killing rivals]; *People v. Chhoun* (2021) 11 Cal.5th 1, 16 [a gang's complex robberies followed a common plan of targeting similar victims and relying on members to play specific roles].)

The Attorney General offers several illustrations of collective engagement. Although nominally offered in support of the Attorney General's common benefit argument, each in fact illustrates the meaning of collective engagement as we have described it. In one example, a gang tasked members with collecting "taxes" from local businesses or drug dealers as a way of maintaining the gang's territory. In a second example, the gang directed members to sell drugs in the gang's territory with proceeds from the sales used to benefit the gang. A third example described a gang in which members were authorized to attack rivals on a "green light list" maintained by the gang. And in another scenario, discussed above, one member sold drugs for the gang, a second murdered a rival drug dealer, and a third hid the murder weapon. In these examples, gang members play a role in enforcing the territory and terms of the gang's drug trade

or, by killing certain targeted individuals, carry out an edict to eliminate rivals who pose a threat to the gang. In all of the examples, the predicate offenses create a common benefit to the gang. But in all of the examples, the offenses also relate to the essential characteristics of the criminal street gang — its organizational structure, primary activities, or common goals and principles.

The Attorney General's examples thus reinforce our understanding of the collective engagement language. The core inquiry is whether there exists an organizational nexus between the crime and the gang. For reasons explained above, this is conceptually distinct from the requirement to prove that each predicate offense "commonly benefited" the gang (§ 186.22(e)(1)), even though the facts necessary to prove the two requirements will often overlap with one another. Though the crimes in the examples above may have been committed by individual gang members, and provided a benefit to the gang, the undertakings reflect the collective engagement of the gang inasmuch as there exists an organizational nexus between the crimes and the particular characteristics of the " 'criminal street gang' " established under section 186.22(f).

## III.

Clark is entitled to a remand for further proceedings unless the lack of instruction on new elements that apply retroactively under *In re Estrada* (1965) 63 Cal.2d 740 is harmless beyond a reasonable doubt. (*People v. Cooper* (2023) 14 Cal.5th 735, 742; *Tran, supra,* 13 Cal.5th at p. 1207.) We conclude that the lack of instruction was not harmless.

The Court of Appeal in this case held that because there was evidence that two members of Sex Cash Money committed

crimes on separate occasions, any reasonable jury would have concluded beyond a reasonable doubt that "members of Sex Cash Money 'collectively . . . have engaged in . . . a pattern of criminal gang activity.' (§ 186.22, subd. (f).)" (*Clark*, *supra*, 81 Cal.App.5th at p. 146.) For reasons we have explained, we do not agree; to establish collective engagement, the prosecution should have established a nexus between the offenses and the gang as a collective enterprise. There is no evidence in the record from which a jury could have found such a nexus beyond a reasonable doubt.

The evidence of each predicate offense was a plea agreement that contained little information besides the fact that Ridgeway pleaded guilty to robbery and Clark pleaded guilty to attempted residential burglary.[7] Although the expert testifying

---

[7] As indicated, the prosecution presented evidence of additional predicate offenses: certified convictions for Ridgeway, who pleaded guilty to a 2009 residential burglary with a gang enhancement, and for the three gang members with Clark during the July 2015 break-in, who each pleaded or were found guilty of burglary for their roles in that offense. After amendment, section 186.22 provides that at least one of the predicate offenses must have occurred "after the effective date of this chapter, and the last of those offenses occurred within three years of the prior offense and within three years of the date the current offense." (§ 186.22(e)(1).) The amendments also established that the currently charged crime cannot be used as a predicate offense (*id*., subd. (e)(2)). As such, evidence of Ridgeway's 2009 burglary and the other gang members' participation in the current offense do not qualify as predicate offenses under the amended statute. The Attorney General asserts that Ridgeway's 2009 conviction qualifies under the amended statute, "because there was another offense committed within three years of the charged offense." This misreads the

for the prosecution discussed the benefits that might flow to the gang from the charged crimes, the prosecution did not present evidence to establish whether the predicate offenses were committed to benefit the gang, or whether there existed an organizational nexus between those offenses and the gang as a collective enterprise. "Under these circumstances, we cannot conclude 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' " (*People v. Cooper*, *supra,* 14 Cal.5th at p. 746.)

We reverse the judgment of the Court of Appeal as to Clark's gang enhancement, with instructions to remand to the superior court for further proceedings consistent with this opinion.[8] The People are free on remand to offer additional evidence to satisfy the newly enacted requirements of section 186.22. (See *People v. Cooper*, *supra,* 14 Cal.5th at p. 746 [reversing the pre-Assem. Bill 333 gang enhancement for

timing requirements. The two 2014 convictions (one for Ridgeway and one for Clark) are within three years of the charged offense, but Ridgeway's prior 2009 conviction is not within three years of those offenses.

[8] We disapprove *People v. Delgado*, *supra,* 74 Cal.App.5th 1067, to the extent it articulates an interpretation of the collective engagement requirement different from the one we have described here. Similarly, we disapprove of *People v. Lopez, supra,* 73 Cal.App.5th 327, to the extent the court's implicit assumptions about the meaning of collective engagement may conflict with this opinion. Recognizing the conflict between the Courts of Appeal in *Delgado* and in this case, the court in *Rodas-Gramajo v. Superior Court* (2023) 92 Cal.App.5th 656 assumed that *Delgado*'s interpretation applied, requiring predicate offenses to be committed by two gang members acting in concert. (*Id.* at p. 668 & fn. 7.) We disapprove of that portion of *Rodas-Gramajo v. Superior Court, supra,* 92 Cal.App.5th 656 as well.

insufficient proof and recognizing authority entitling the People to retry the affected charges on remand].)


**KRUGER J.**


**We Concur:**

**GUERRERO, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**GROBAN, J.**
**JENKINS, J.**
**EVANS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  People v. Clark

_____

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 81 Cal.App.5th 133
**Review Granted (unpublished)**
**Rehearing Granted**

_____

**Opinion No.** S275746
**Date Filed:** February 22, 2024

_____

**Court:** Superior
**County:** Riverside
**Judge:** Bambi J. Moyer

_____

**Counsel:**

Patrick Morgan Ford, under appointment by the Supreme Court, for Defendant and Appellant.

Sylvia Perez MacDonald, Lana M. Kreidie; and William Safford for Santa Clara County Independent Defense Counsel Office as Amicus Curiae on behalf of Defendant and Appellant.

Sean Garcia-Leys for Peace and Justice Law Center as Amicus Curiae on behalf of Defendant and Appellant.

Sixth District Appellate Program and Jonathan Grossman for Pacific Juvenile Defender Center as Amicus Curiae on behalf of Defendant and Appellant.

Mary K. McComb, State Public Defender, and Elias Batchelder, Deputy State Public Defender, for Office of the State Public Defender as Amicus Curiae on behalf of Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland and Charles C. Ragland, Assistant Attorneys General, Steve Oetting, Alana Cohen Butler and Paige B. Hazard, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Patrick Morgan Ford
Attorney at Law
1901 First Avenue, Suite 400
San Diego, CA 92101
(619) 236-0679

Paige B. Hazard
Deputy Attorney General
600 West Broadway, Suite 1800
San Diego, CA 92101
(619) 540-0201